By the Court :
 

 —This action is brought on a mortgage for
 
 £16,000,
 
 payable on 4th
 
 December,
 
 1774. No suit could be brought on the mortgage before the 4th
 
 December,
 
 1775. Before that period, the war commenced, and on the 10th
 
 September,
 
 1775, the
 
 Congress
 
 prohibited the exportation of commodities, &c. to
 
 Great Britain,
 
 or any of her dominions. This was obligatory on their constituents, and it became unlawful to make any remittances after this to the enemy. During a war all civil actions between enemies are suspended; debts are suspended also, but restored by the peace. For the term of 7 1-2 years, viz. from the 10th
 
 September,
 
 1775, to the 10th
 
 March,
 
 1783the defendant could not have paid this money to the plaintiff, who was an alien enemy, without a violation of the positive laws of this country, and of the laws of nations. They ought not, therefore, to suffer for their moral conduct, and their submission to the laws.
 

 Interest is paid for the
 
 use
 
 or
 
 forbearance
 
 of money. But in the case before us, there could be no forbearance ; because the plaintiff could not enforce the payment of the principal ; nor could the defendants pay him, consistent with law; nor could they pay it without going into, the enemy’s country, where the plaintiff was. Where a person is prevented by law, from paying the principal, he shall not be compelled to pay interest during the prohibition, as in the case of a Garnishee, in a foreign attachment.
 

 It is urged, that a remittance in bills of exchange furnished the enemy with no money. Yet, it is clear, that it would furnish the enemy with the means of carrying on the war, within the
 
 *104
 
 bowells of the country, without bringing any money into it. It is well known, that the bills drawn by the
 
 British
 
 army were the principal bills that were bought and sold; those drawn by
 
 American
 
 citizens were generally protected.
 

 It has been said, that it might have been paid to
 
 Strettle
 
 : But that depended upon his pleasure, whether he chose to act as attorney or not.
 

 I have searched for precedents both in the civil law, and in the books of reports; but could find none. We, therefore, determine on principle and analogy, and are unanimously of opinion, that the plaintiff is not entitled to interest from the 10th Se
 
 ptember,
 
 1775, to 10th
 
 March,
 
 1783; but during the rest of the time he must be allowed full interest.
 

 The Jury adopted the principles of the charge; but struck off 8 1-2 years interest.
 
 *
 

 *
 

 Since the decision of this case, the abatement of interest, during the war, in all actions for the recovery of
 
 British
 
 debts, antecedently due, has been the uniform practice in the Courts of
 
 Pennsylvania
 
 ; but it has been alledged, that in one of the
 
 Circuit Courts
 
 a different rule has been adjudged.
 
 Ant. Foxcraft et al. v. Nagle.
 
 It appears, however, that
 
 Mr. Jefferson,
 
 when Secretary of State, ably maintained, on behalf of the Federal Government, a doctrine similar to that expressed by the Court, in the above report; agreeably to the subjoined extract from his celebrated reply to Mr.
 
 Hammond,
 
 the
 
 British Minister
 
 Plenipotentiary.
 

 “The reasons on which the denial of interest is grounded shall be stated summarily, yet sufficiently to justify the integrity of the judge, and even to induce a presumption, that they might be extended to that of his science also, were that material to the present object.
 

 “ S. 54. The treaty is the text of the law in the present case, and its words are, that there shall be no lawful impediment to the recovery of bona fide
 
 debts.
 
 Nothing is said of
 
 interest
 
 on those debts: And the sole question is whether, where a
 
 debt
 
 is given,
 
 interest
 
 thereon flows from the general principles of the law? Interest is not a part of the debt, but something added to the debt, by way of damage for the detention of it. This is the definition of the
 
 English
 
 lawyers themselves, who say, Interest is recovered by way of
 
 damages
 

 (a.)
 

 ratione detentionis debiti,"
 
 2
 
 Salk.
 
 622, 623. Formerly all interest was considered as unlawful, in every country of Europe: It is still to in Roman Catholic countries, and countries little commercial. From this, as a general rule, a few special cases are excepted. In
 
 France
 
 particularly the exceptions are those of minors, marriage portions, and money, the price of lands. So thoroughly do their laws condemn the allowance of interest, that a party, who has paid it voluntarily, may recover it back again whenever he pleases. Yet this has never been taken up as a gross and flagrant denial of justice, authorising rational complaint
 
 *105
 
 against those governments. In England also all interest was against law, till the Stat. 37. H. 8. O. 9 the growing spirit of commerce, no longer restrained by the principles of the Roman church, then first began to tolerate it. The same causes produced the same effect in Holland, and, perhaps, in some other commercial and catholic countries. But even in England the allowance of inter-til is not given by
 
 express law
 
 but rests on the
 
 discretion of judges
 
 and juries, as the arbiters of damages. Sometimes the judge has enlarged the interest to 20 per cent per annum, (1 Chanc. Rep, 57). In other cases he fixes it habitually one per cen lower than the legal rate (2 Tr. Atk. 343.) and in a multitude of cases he refuses it altogether. As for instance, no interest is allowed,
 

 1 On arrears of rents, profits, of annuities 1 Clian. Rep; 184. 2. P. W. 163. Ca. temp. Talbot 2.
 

 2. For maintenance, Vin. Abr. Interest. C. 10.
 

 3. For monies advanced by Executors. 2. Abr. Eq. 531, 15.
 

 4. For goods sold and delivered. 3. Wilson206.
 

 5. On book debts, open accounts, or simple contracts. 3. Chan. Rep. 64. Freem. Ch. Rep. 133. Dougl. 376.
 

 6.For money lent without a note. 2. Stra. 910.
 

 7.On an inland bill of exchange, if no protect is taken. 2. Stra. 910.
 

 8.On a bond after 20 years. 2. Vern. 458, or after a tender.
 

 9. On a decree in certain cases. Freem. Ch. Rep. 181.
 

 10. On judgments in certain cases, as battery and slander. Freem. Ch. Rep. 37.
 

 11. On any decrees or judgments in certain courts, as the exchequer chamber, Douglass, 753.
 

 12. On costs, 2. Abr. Eq. 530.7.
 

 And we may add, once for all; that there is no instrument or title to debt so formal and sacred, as to give a right, to interest on it under all possible circumstances. The words of Lord Man field in Dougl. 753. where he says. "That the question was what was to be the rule for assessing the
 
 damage,
 
 and that, in this case,
 
 the interest
 
 ought to he the
 
 measure of the
 
 damage, the action being for a
 
 debt,
 
 but in a case of another fort
 
 the rule might be different
 
 ” his words in Dougl. 376. "That interest might be payable in cases of delay: If a jury in
 
 their
 
 discretion, shall think fit to allow it.” And the doctrine in Giles. v.
 
 *106
 
 Hart. 2. Salk. 622. that damages, or interest, are but an accessary to the debt, which may be barred by circumstances, which do not; touch the debt itself;—suffice to prove that interest is not a part of the debt, neither comprehended in the thing, nor in the term; that words, which pass the debt, do not give interest necessarily, that the interest
 
 depends altogether on the discretion of the judges and jurors,
 
 who will, govern themselves by all existing circumstances; will take the legal interest for the measure of their damages, or more, or less, as they think right; or will give it from the date of the contract, or from a year after, or deny it altogether, according as the fault or the sufferings of the one, or the other party shall dictate. Our laws are generally an adoption of yours; and I do not know that any of the states have changed them in this particular. But there is one rule of your and our law, which, while it proves that every title of debt is liable to a disallowance of interest under special circumstances, is so applicable to our case, that. I shall cite it as a text, and apply to it the circumstances of our case. It is laid down in Vin. Abr. Interest C. 7. and 2. Abr. Eq. 529, and elsewhere in these words, ‘Where, by
 
 a general and national calamity,
 
 nothing is made out of lands, which ate assigned for payment of interest, it ought not to run
 
 on during the time of such calamity,'
 
 This is exactly the case in question. Can a more
 
 general national, calamity
 
 be conceived than that universal devastation, which took place in many of these states during the war? Was it ever more exactly the case any where,
 
 that nothing was made out of the lands which were to pay the interest ?
 
 The produce of those lands, for want of the opportunity of exporting it safely, was down to almost nothing is real money; e. g. Tobacco was less than a dollar the hundred weight. Imported articles of clothing or consumption, were from 4 to 8 times their usual price. A bushel of salt was usually sold for 100lb. of tobacco; At the same time these lands, and other property, in which the money of the British creditors was vested, were paying high taxes for their own protection, and the debtor, as nominal holder, stood ultimate insurer of their value to the creditor; who was the real proprietor, because they were bought with his money. And who will estimate the value of this insurance, or say what would have been the forfeit, in a contrary event of the war? Who will say that the silk of the property was not worth the interest of its price?
 
 General
 
 
 *107
 

 calamity
 
 then prevented profit, and consequently stopped interest, which is in lieu of profit. The creditor says, indeed, he has laid out of his money; he has therefore left the use of it. The debtor replies, that if the creditor has lost, he has not gained it: that this may be a question between two parties, both of whom have lost. In that case the courts will not double the loss of the one, to save all loss from the other. That it is a rule of natural, as well as municipal law, that in questions de damno evitando melior est conditio possidentis. If this maxim be just, where each party is equally innocent, how much more so, where the loss has been produced by the act of the creditor? For a nation, as a society, forms a moral person, and every member of it is personally responsible for his society. It was the act of the lender, or of his nation, which annihilated the profits of the money lent; he cannot then demand profits, which he either prevented from coming into existence, or burnt or otherwise destroyed, after they were produced. If then there be no instrument, or title of debt, so formal and sacred as to give a right to interest under all possible circumstances, and if circumstances of exemption, stronger than in the present case, cannot possibly be found, then no instrument or title of debt, however formal or sacred, can give right to interest under the circumstances of our case. Let us present the question in another point of view. Your own law forbade, the payment of interest when it forbade the receipt of American produce into Great Britain, and made that produce fair prize on its way from the debtor to the creditor, or to any other for his use and reimbursement. All personal access between creditor and debtor was made illegal, and the debtor who endeavoured to make a remitment of his debt, or interest, must have done it three times, to assure its getting once to hand: For two out of three vessels were generally taken by the creditor nation, and sometimes by the creditor himself, as many of them turned their trading vessels into, privateers. Where no place has beep, agreed on for the payment of a debt, the laws of England, oblige the debtor to seek his creditor wheresoever he is to be found
 
 within the realm.
 
 Coke Lit. 210. b. but do not bind him to go out of the realm in search of him. This is our law too. The first act, generally, of the creditors and their agents here, was to withdraw from the United with their books and papers. The creditor thus withdrawing from his debtor, so as to render payment
 
 *108
 
 impossible, either of the principal or interest, makes it like the common case of a tender and refusal of money, after which interest stops, both by your laws and ours. We see too, from the letter of Mr. Adams. June 16, 1786, that the British Secretary for foreign affairs was sensible, that a British statute having rendered criminal all intercourse between the debtor and creditor, had placed the article of interest on a different footing from the principal. And the letter of our Plenipotentiaries to Mr. Hartley, the British Plenipotentiary for forming the definitive treaty, shews that the omission to express
 
 interest
 
 in the treaty was not merely an oversight of the parties; that its allowance was considered by our plenipotentiaries as a thing not to be inserted in the treaty; was declared against by Congress, and that declaration communicated to Mr. Hartley. After such an explanation, the omission is a proof of acquiescence, and an intention not to claim it. It appears then, that the
 
 debt
 
 and
 
 interest
 
 on that debt, are separate things in every country, and under separate rules. That in every country a debt is recoverable, while in most countries, interest is refused in all cases; in others, given or refused, diminished, or augmented, at the discretion of the Judge; no where given in all cases indiscriminately, and consequently no where fo incorporated with the
 
 debt
 
 as to pass with that ex vi termini, or otherwise to be considered as a determinate and vested thing.
 

 While the taking
 
 interest on money
 
 has thus been considered in some countries as morally wrong in all cases, in others made legally right but in particular cases, the taking
 
 profits from lands
 
 or rents in lieu of profits, has been allowed every where, and at all times, both in morality and law. Hence it is laid down as a general rule Wolf. S. 229
 
 *
 
 ‘Si quis fundum alienum possidet, domini est quantum valet usus fundi, et possessoris quantum valet ejus cultura et cura.’ But even in the case of lands, restored by a treaty, the
 
 arrears
 
 of profits or rents are never restored, unless they be particularly
 
 *109
 
 stipulated.
 
 †
 
 ‘Si res vi pacis restituendæ, restituerdi quoque sunt fructus a cie
 
 concession's,’
 
 says Wolf. S. 1224. And Grotius 'cui pace, res conceditur, ei et fructus conceduntur a
 
 tempore concessions,
 
 non retro. L. 3. C. 20. S. 22. To place the right to interest on money on a level with the right to profits on land, is placing it more advantageously than has been hituerto authorized ; and if, as we have seen, a stipulation to restore
 
 lands
 
 does not include a stipulation to restore the
 
 back profits,
 
 we may certainly conclude a fortiori, that the restitution of debts does not include an allowance of
 
 back interest
 
 on them.
 

 These reasons, and others like these, have probably operated on the different courts to produce decisions, that 'no interest should run during the time this general and national calamity lasted.’ And they seem sufficient, at least, to rescue their decisions from that flagrant denial of right, which can alone authorize one nation to come forward with complaints against the judiciary proceedings'of another.
 

 S. 55. The states have been uniform in the allowance of interest before and since the war but not of that claimed during the war. Thus we know by the case of Neate’s executors v. Sands in New York, and Middred
 
 v.
 
 Dorsey in Maryland, that in those states, interest during the war is disallowed by the courts. By the act relating to debts due to persons who have been and remained within the enemy’s power, or lines during the late war (passed May, 1784.) that Connecticut left ft to their court of Chancery to determine the matter according to the rules of equity, or to leave it to referees. By the case of Osborne v. Mifflin’s executors, and Hare v. Allen, explained in the letter of Mr, Rawle, attorney of the United
 
 *110
 
 States and by the letter of Mr. Lewis, Judge of the district court of the United States, that in Pennsylvania the rule is, that where neither the creditor nor any agent, was within the state, no interest was allowed; where either remained, they gave interest. In all the other states I believe it is left discretionary in the courts and juries. In Massachusets, the practice has varied. In November, 1784, they instruct their delegates in Congress to ask the determination of Congress, whether they understood the word
 
 ‘
 
 debts’ in the treaty as. including interest? And whether it is their opinion, that interest during the war should be paid
 
 ?
 
 And at the same time they pass the act directing the courts to suspend rendering judgment for any interest that might have accrued between April 19, 1775, and January 20, 1783. But in 1787, when, there was a general compliance enacted through all the United States, in order to see if that would produce a counter-compliance, their legislature passed the a
 
 ct
 
 repealing all laws repugnant to the treaty, and their courts, on their part, changed their rule relative to interest during the war, which they have uniformly allowed since that time. The circuit court of the United States, at their sessions at in 1790, determined in like manner that interest should be allowed during the war. So than on the whole we fee that, in one state, interest during the war is given in every case, in another it is given wherever the creditor, or any agent for him, remained in the country, so as to be accessible; and in the others, it is left to the courts and juries to, decide, according to their discretion and the circumstances of the case.
 

 (a.)
 

 On account of the detention of the debt.
 

 *
 

 '
 
 If any one is in possession of another’s
 
 land,
 
 so much belongs to the owner as the use of the land is
 
 worth,
 
 and so much to the possessor as his labor and care are worth.'
 

 †
 

 If thing are to be restored by virtue of the peace, the profits are also to be restored
 
 from the day of the cession.
 

 ‘To
 
 whomsoever a thing is conceded by the peace, to him also the profits are conceded,
 
 from the time of the concession, but not back.