Le Branthwait *v.* Halsey.

This was an indictment in the Oyer and Terminer of Burlington.

*Wall,* for the defendant, said he was extremely anxious to have this indictment tried at the next Oyer and Terminer, and to have the benefit of a special jury, and asked if this court could grant a rule for a special jury to try a cause in the Oyer and Terminer. He had understood that there had been such a practice.

---

ABRAHAM LE BRANTHWAIT and MARY M. LE BRANTHWAIT
*vs.* WILLIAM HALSEY.

The obligee of a bond, for the purpose of having it collected, makes an unconditional assignment of it to B.; and afterwards, fearing that B. will appropriate the money to his own use, files a bill in Chancery to restrain the obligor from paying the money to B., and B. from receiving it. During the continuance of the injunction the obligor is not chargeable with interest.

This case came before the court upon the following statement of facts agreed upon by the parties: William Halsey, the defendant in this cause, on the 7th of October, A. D. 1819, gave his bond in the penal sum of eight thousand dollars, conditioned for the payment of four thousand dol-

lars to Abraham Le Branthwait and Mary Margaret Le Branthwait, the plaintiffs in this action, which bond is past due, and this suit is brought to recover the same. The plaintiffs, residing at Baltimore, in the state of Maryland, on the eighteenth day of August, in the year of our Lord one thousand *eight hundred and twenty, assigned the [*4 said bond to one Edward Webb, which assignment is made on the bond, and is absolute and unconditional upon the face of it. After this assignment to Edward Webb, and while he held the bond, sundry payments, and to a considerable amount, were made him or his agent on the said bond, by William Halsey, the defendant. The plaintiffs in this cause losing their confidence in Edward Webb, filed a bill of complaint in the Court of Chancery of this state, charging the assignment so made by them to Edward Webb, to have been made in trust for themselves, and as a greater convenience for receiving the money, as said Webb was coming on to this state, and that they were of the opinion, from the course of his conduct, that he intended to collect the money on his own account and to defraud them of their rights; and such proceedings were had in that suit that an injunction was obtained restraining Edward Webb from receiving, and William Halsey, the defendant in this cause, from paying any more money to the said Edward Webb on the said bond until the further order of that court. This injunction was served on William Halsey, the defendant, on the eleventh day of September, in the year of our Lord one thousand eight hundred and twenty-one, and continued in full force until the tenth day of February, in the year of our Lord one thousand eight hundred and twenty-four, when the plaintiffs settled with the said Edward Webb, the bond was returned to them, and the bill filed by the present plaintiffs was dismissed according to the forms in that court, and William Halsey, the defendant, duly notified of the dismissal of that suit, and of the return of the bond to the plaintiffs. The question submitted to the court, is whether

the defendant, William Halsey, in this action, is bound to pay interest on his said bond to the present plaintiffs, from the eleventh day of September, in the year of our Lord one thousand eight hundred and twenty-one, to the tenth day of February, in the year of our Lord one thousand eight hundred and twenty-four, the time that he was enjoined from making any payments to Edward Webb, as before stated.

If the said William Halsey is bound to pay interest during the time the injunction was upon him, it is admitted that the amount due on the fifth day of September, in the year of our Lord one thousand eight hundred and twenty-six, on the said bond, will be three thousand six hundred and seventy-four dollars and sixty-five cents. If he is not bound to pay interest during that time, it is admitted that the amount due on the said bond on the said fifth day of *5] September, *one thousand eight hundred and twenty-six, will be three thousand two hundred and fifty-one dollars and eighty-three cents.

As the decision of the court shall be upon the above stated question, the sum due on the said bond is hereby ascertained and fixed by the parties, for which the plaintiffs are to enter up judgment and issue execution as if a verdict of a jury had been rendered for the same; reserving to each party the right to turn the case into a special verdict.

WM. PENNINGTON, *Attorney for plaintiffs.*
WM. HALSEY, *pro se.*

The CHIEF JUSTICE delivered the opinion of the court.

The defendant on the 7th October, 1819, gave his bond to the plaintiffs, conditioned for the payment of a sum of money. The plaintiffs assigned this bond, on the 18th of August, 1820, to Edward Webb, by an assignment made on the bond and on the face of it absolute and unconditional. After the assignment, and while the bond was held by Webb, the defendant made to him and to his agent, sundry payments, and to a considerable amount. The

plaintiffs afterwards filed a bill in the Court of Chancery, charging that the assignment to Webb was made in trust for themselves, and as a greater convenience for receiving the money, as Webb was coming on from Baltimore, where both he and they resided, to this state, and that they were of opinion from his course of conduct he intended to collect the money on his own account and defraud them of their rights. An injunction was issued restraining Webb from receiving, and the defendant in this cause from paying any more money to Webb until the further order of that court. The injunction was served on the defendant on the 11th of September, 1821, and remained in force until the 10th of February, 1824, when the plaintiff settled with Webb, the bond was returned to them, their bill dismissed, and notice given to the defendant.

The single question upon the state of the case, which was submitted to us, without argument, at the last term, is whether the defendant is legally chargeable with interest during the pendency of the injunction.

By the act of the plaintiffs, done for their own benefit, the defendant was restrained, and legally prohibited from paying either principal or interest during the period in question. To the plaintiffs he could not pay, because they had voluntarily and unconditionally, as appeared by their own act, parted with the bond by the *assignment to [*6 Webb. To him the defendant could not pay because forbidden by the authority of the Chancellor. No collusion with Webb, nor any desire or affectation of delay is charged against the defendant; and on the termination, it appears the bond was obtained by the plaintiffs, not by a decree of the Chancellor, but by an arrangement with Webb. During the pendency of the injunction the retention of the money by the defendant was not voluntary but compulsory. Whether it was convenient to hold it or more convenient to pay it, was not left to his discretion or choice. But to subserve the purposes of the plaintiffs he

was required and compelled to keep it. It may be said the defendant might have paid the money into court. Without, however, stopping to enquire whether the Chancellor would allow a payment into court, in a case where the assignor asked from the assignee only to return the bond, and account for what he had actually received, and sought for neither relief nor decree against the obligor, and only introduced him into the bill for the sake of the injunction, it can afford no foundation to support the charge of interest that the defendant might have adopted a measure, which, while it would have unequivocally precluded the plaintiffs from obtaining any interest, would at the same time have subjected them to the costs incident to the payment into court and to the commission or percentage of the clerk.

No interest ought, in our opinion, to be charged. The loss and injury sustained by the plaintiffs are the consequence of their own imprudent act, in placing their confidence in Webb, an unworthy trustee.

I have searched the chancery books, both English and American, with some care ; and somewhat to my surprise, I have not found a decision in point upon the present question.

Principle, however, and cases bearing strong analogy, are not wanting.

In the case of *Conn* v. *Penn,* 1 *Peters* 524, Judge Washington laid down the general rule on the accrual of interest to be as follows : Whenever the law prohibits the payment of the principal, interest during the existence of the prohibition is not demandable. He applied it to the case of a debt due from an American debtor to a British creditor during the revolutionary war, and he further remarked, that a prohibition of all intercourse with an enemy during the war, and the legal consequence resulting therefrom, as *7] it respects *debtors on either side, furnish a sound, if not in all instances a just reason for the abatement of inter-

est until the return of peace. A similar rule was laid down, and a similar application of it made by the Supreme Court of Pennsylvania, in the case of *Hoare* v. *Allen,* 2 *Dall.* 102.

The legislature of our state prohibited the recovery of interest on certain debts during a portion of the revolutionary period. The prohibition and the reason of it, will be found in the eighth section of the act of 8th December, 1784, *Patt.* 59, by which it was enacted, " That in all debts contracted before or during the late war, no interest shall be allowed on the demands of any creditors from the 4th of July, 1776, to the 3d of December, 1783, by whose conduct the non-payment of such demands has been occasioned, whether the same was owing to their removing or remaining within the lines of the enemy, or places in their possession, or to any other act of such creditors, by which their debtors were prevented from discharging their obligations."

In *McCall* v. *Turner,* 1 *Call* 115, the Court of Appeals of Virginia held, that where a creditor by his own act put it out of the power of the debtor to make payment, interest was not recoverable. Turner, the defendant, in January, 1774, had made a bond, conditioned for the payment of a sum of money in October of that year, which bond had been assigned to McCall, the plaintiff. In 1793, the plaintiff brought suit on the bond. On the trial the defendant proved that the plaintiff went out of Virginia into foreign parts beyond seas, and was absent until some time in 1783, and had not during that period any known agent or attorney in the commonwealth who could receive payment of the debt and give a legal discharge. During that period the interest was disallowed. On appeal the disallowance was unanimously approved by the Court of Appeals. One of the judges said, the plaintiff by absenting himself from the country put it out of the debtor's power to make payment, and therefore it was unreasonable that he should demand interest during that period. Another judge said " As to

the justice of the case, I do not think that its being a British debt or not makes any difference; the same rule would apply in a case between two citizens."

In all these cases, it will be observed, the money remained in the hands of the debtor—he used, or might have used it. The trite adage that money is worth its interest, which is *8] sometimes true *and at other times not, depending always on circumstances, did not fix the charge. The principle of these cases is, that when payment is prevented by the interposition of the law, or the act of the creditor, interest is not recoverable.

In the case of *Fitsgerald* v. *Caldwell*, 2 *Dall.* 215, 1 *Yeates* 274, the Supreme Court of Pennsylvania decided that a garnishee is not liable for interest while he is restrained from the payment of the debt, by the legal operation of a foreign attachment. The same principle was decided in *Willings and Francis* v. *Consequa*, by the Circuit Court of the United States for the district of Pennsylvania, 1 *Peters* 321, and by the Supreme Court of Massachusetts, in *Prescott* v. *Parker*, 4 *Mass. Rep.* 170.

Interest is not recoverable.