SUSAN PRICE vs. JOHN THORNTON, et al.

| 10 | 135 |
| 126 | 148 |
| 10 | 135 |
| 86a | 72 |

1. The owners of a steamboat are liable to the owner of a slave carried off and lost by the carelessness of the Captain, in permitting said slave to ship upon his boat.

| 10 | 135 |
| 173 | ³¹721 |

2. The act which makes penal the carrying slaves out of this State by the Captain of a boat, is to be construed strictly, and applies only to such as knowingly carry away a slave. For such an act, it being a high crime, the owners would not be liable.

3. The declarations of the Captain at the time of taking the slaves upon the boat, or during the voyage are admissible against the owners; but not declarations made subsequent thereto.

*Price* vs. *Thornton, et. al.*

## APPEAL from St. Louis Circuit Court.

GANTT *for the Appellant.*

The plaintiff in error contends, and submits to the Court here, that

1. The admissions of White, a part owner of the Leavenworth, were admissible in evidence against the other owners, as well as himself.

2. That the negligence and privity of White, agent of the owners of the Leavenworth, is the negligence and privity of the owners themselves. If he knew, or negligently permitted the slaves to be carried on the Leavenworth, the owners are liable, the boat being engaged in her regular voyage or trip.

3. That the owners of a steamboat are liable on general principles for the negligence of their agents, to any one who sustains damages thereby.

4. That neither our statute nor the general law requires that the owner of the boat should be privy to the fact that he is abducting, or furnishing means of absconding to, a slave, by means of his vessel, in order to make him liable to the owner of the slave.

5. That the Court improperly excluded the evidence tending to show that the Leavenworth necessarily went out of the State in coming from Glasgow to St. Louis.

GEYER *for the Appellees.*

The defendants in error claim the affirmance of the judgment of the Circuit Court on the following grounds :

1. The defendants as part owners of the Leavenworth are not answerable for the tortious acts of Capt. White, either as Master or part owner, to which they were not privy, and did not authorize, Abbot on Ship. 132. The responsibility of owners for the acts of the Master is not universal, but *is confined to cases within the scope of* his authority. Reynolds vs. Tappan, 15 Mass. 370. They are not liable for acts of piracy. Dios vs. Owners of Revenge, 3 Wash. Cir. C. Rep. 262.

2. The Circuit Court at St. Louis could not entertain the suit after a *nolle prose qui* has been entered against the only defendants within its jurisdiction. Rev. C. 1835, page 450, sections 4, 6.

3. The declarations of White after the slaves arrived at St. Louis are not competent evidence against the defendants.

NAPTON, J., *delivered the opinion of the Court.*

This was an action on the case, brought by the plaintiff in error, against the defendants, who were sued in connection with David Tatum and Samuel Lewis, as owners of the steamboat General Leavenworth. The declaration contained four counts, charging the defendants with having, through their agent and servant, the Master of the said boat, carelessly and negligently shipped on board of said boat two slaves belonging to the plaintiff, without the consent or knowledge of the plaintiff, whereby the said slaves were totally lost, &c. The defendants pleaded not guilty.

The bill of exceptions taken at the trial shows that the plaintiff offered testimony conducing to establish the following facts :—Joseph White was the Captain, and part owner of the steamboat Leavenworth, and whilst said boat was lying at Glasgow, two slaves belonging to the plaintiff applied to him for passage on his boat to St. Louis, and produced some papers which the witness thought did not have any seal affixed thereto. Capt. White was heard to tell them that their passage to St. Louis would be four dollars a piece, if they wooded. Capt. White's attention was directed once or twice during the downward trip of the boat to the propriety of investigating more closely the character of the negroes; but nothing was done, and the negroes after their arrival at St. Louis, escaped in another boat bound for Cincinnati—and were never recovered.

The plaintiff offered to prove upon the trial, the declarations and admissions of Capt. White; but they were excluded.

The Court, at the instance of the defendants, instructed the jury that if they found from the evidence that the slaves in the declaration mentioned, were shipped on board the steamboat Leavenworth, without the knowledge or consent of the defendants, the plaintiff could not recover.

The defendants had a verdict and judgment. The case is brought here by writ of error.

The question presented by the record is, whether an action on the case can be maintained against the owners of a steamboat for the negligence of the Master, in permitting the plaintiff's slaves to take passage on the boat as freemen, or in allowing them to be shipped on the boat, without the consent of the owner of said slaves. That an action of trespass in such case would lie against the Captain, was decided by this Court, at the last term, in the case of Eaton vs. Vaughn.

The general principle of law is, that the Master is liable for the acts of his servant, when the servant is acting in execution of the authority given him. Where a servant loses sight of his Master's interest and business, and through mere malice of his own, commits a trespass or felony, the Master is not liable. But even when a trespass is committed by the servant, if done through negligence or inattention, and whilst in the attempted discharge of duty, the Master is liable, not for the trespass, but in an action on the case for the damages consequential on his employment of an unskilful servant. McManus vs. Crickett, 1 East. 108. It is upon this principle that actions have been brought and maintained against the proprietors of stage coaches, rail road cars, &c., for injuries resulting from the mismanagement of their officers and servants.

Moreton vs. Hardem and others, 4 B. & C. 223. Johnson & Co. vs. Small, 5 Ben. Mon. 25. It is upon the same grounds that owners of ships have been held liable not only for the contracts but for the torts of the Master, when done within the scope of his employment. The responsibility cast upon the owners of ships for the acts of the Master, is based upon the soundest principles of public policy, arising not only from the fact that the Master is selected by the owners, and held forth to the public as a person worthy of trust and confidence, but growing out of the necessity of preventing opportunities for fraud and collusion, which would otherwise be afforded. Abbott on Shipping, p. 131. Hence all injuries by collision, arising from the want of skill and care of the Master, fall upon the owner. 4 Dall. R. 206. 1 Dall. R. 184. But the responsibility of the owner is not confined to cases of this character; for any other *torts* committed on the high seas, except where they are acts of piracy, the owners are personally liable. Mauro vs. Almeida, 10 Whea. R. 486. Mealary vs. Shattuck, 3 Cranch, 458. Murray vs. Charming Betsey, 2 Cranch, 483. The Apollon, 9 Whea. 362. In Talbot vs. The Commanders and Owners of Three Brigs, (2 Dall. 103,) the responsibility of the owners for the default of the Master for an illegal seizure on the high seas, was fully maintained; and it is said by Judge Story, in his notes to Abbott on Shipping, (p. 132,) that the right to institute proceedings in the admiralty by a suit *in personam* for *torts* on the high seas against the Master and owners, has been well established, and applies to cases of spoilation, illegal seizure, and personal damage. The case of the Amiable Nancy (3 Whea. 546,) is a striking illustration of the character of this responsibility, and the extent to which it has been carried. That was a suit against the owners of a privateer, for boarding a neutral schooner, and robbing and plundering the libellants who were on board the schooner of divers articles of wearing apparel and money, and robbing and plundering the schooner of her papers. The Court said:—"Upon the facts disclosed in evidence, this must be pronounced a case of gross and wanton outrage, without any just provocation or excuse. Under such circumstances, the honor of the country, and the duty of the Court equally require that a just compensation should be made to the unoffending neutrals, for all the injuries and losses actually sustained by them. And if this were a suit against the original wrong doers, it might be proper to go yet farther, and visit upon them in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is a suit against the owners of the privateer, upon whom the law has

from motives of policy devolved a responsibility for the conduct of the officers and crew employed by them, and yet from the nature of the service, they can scarcely ever be able to secure to themselves an adequate indemnity in case of loss. They are innocent of the demerit of this transaction, having neither directed it, nor countenanced it, nor participated in it, in the slightest degree. Under such circumstances we are of opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants, but they are not bound to the extent of vindictive damages."

This case is only cited to illustrate the principle that where the Master of a ship is in the apparent discharge of his duties, the owners are liable for trespasses committed on the high seas, however outrageous they may be, if they fall short of piracy. It was the business of the privateer to capture vessels of the enemy, but not those belonging to neutral nations ; and where through mistake or negligence the rights of neutrals have been invaded, the redress of the injured party is not confined to the Master and crew, who commit the illegal seizure, but the owners of the privateer are held responsible. It is equally well settled that they would not be responsible for acts of piracy committed by the officers and crew ; for these acts cannot in any sense be deemed within the scope of the confidence reposed in them. Dias vs. Owners of Revenge, 3 Wash. C. C. R. 262.

The difficulty is to determine whether the act, in doing which the injury has accrued, be one that is within the scope of authority entrusted to the Master. In the case of Palfrey vs. Kerr and others, (8 Mar. Lou. Rep. N. S. 503,) the defendants, who were owners of a steamboat, resisted the claim of the plaintiff to damages resulting from the hiring of the plaintiff's slave by the Master of the boat without consent of the plaintiff, who was owner of the slave, on the ground that the act was an illicit one, and not within the scope of his agency. And of this opinion were the Court, who referred to the statute laws of Louisiana, which provided that he who hired a slave without the owner's consent should pay a daily compensation and all damages, and in case of his inability to pay, should be fined and imprisoned. From this the Court concluded that the act constituted a misdemeanor, for which the offender was liable in damages *civiliter*, and condemned to pay a fine to the State. The same position was taken by the same Court in the case of Strawbridge vs. Turner, 9 Lou. Rep. 213.

This distinction seems to be a sound one, and its adoption by the Supreme Court of Louisiana in the case of steamboats, by analogy to

the responsibility of ship owners, will fully authorize the application of the principle in the present case. If the Captain of the Leavenworth has been guilty of stealing slaves, or of taking them on his boat, know- ing them to be slaves, and transporting them to St. Louis, or elsewhere, he has been guilty of either a felony or a misdemeanor, for which his employers are not responsible. The law in force in 1840, when the occurrence took place which forms the ground work of this action, pro- vided, that any Master, Commander, or Owner of any boat, or other vessel, who shall transport any slave out of this State in such vessel, without the consent or permission of the person to whom such slave does of right belong, or who has authority to grant such consent or per- mission, shall forfeit and pay one hundred and fifty dollars. This was without prejudice to the right of such owner to his action at common law. The act of Feb. 13, 1841, has somewhat increased the penalty. These statutes being penal in their character, must be strictly con- strued, and an unintentional violation of their provisions, we suppose, was not designed to be punished. The declaration in the present case charges a mere negligence, and not a wanton violation of the statute ; the evidence tended to establish that the Captain of the steamboat was imposed upon by the slaves, by means of free papers, and was induced to take them as passengers on his boat, under the belief that they were free. This is not a crime or misdemeanor under our statute ; but it may be a case of such gross negligence on the part of the Captain of the steamboat as to make the owners responsible for the damages which resulted.

As to the admissibility of Capt. White's declarations, it does not ap- pear what their character was, or at what time they were made. Any admissions or declarations made by him, after the transaction, would be no evidence against the owners. They are bound for the actual con- duct of Capt. White ;—not for what he might say he had done. All declarations, therefore, made subsequent to the act, to which they relate, and out of the course of his official duty, should be excluded. But any thing said or done by Capt. White in the progress of his voy- age whilst receiving the slaves on board, in receiving from them their passage money ; in short, any thing which constituted a part of the *res gestæ*, would be clearly admissible.

The Circuit Court in the instruction given, put the responsibility of the owners entirely upon the fact of their participation in the trespass of the Master. As there was no evidence whatever on this head, and it was entirely immaterial whether the owners were personally concerned

in the illegal act or not, the judgment must be reversed, and the cause remanded.