The opinion of the court was delivered by
'Bkeweb, J.:
This was an action brought by plaintiff in error, plaintiff below, to recover damages for an alleged wrongful imprisonment. In his petition plaintiff alleged that defendant was prosecuting witness in a criminal prosecution brought under § 1, ch. 113, Comp. Laws of 1879. He set out copies of the complaint and warrant, and further alleged that the prosecution was without probable cause, and malicious. He thus claims to have set forth in his petition an illegal arrest and detention under such circumstances as to *454 ■constitute both an action of false imprisonment and one of malicious prosecution. That where but a single detention and imprisonment is complained of, plaintiff may so charge it as to show both a causé of false imprisonment and one of malicious prosecution, has been settled in this court in the case of Bauer v. Clay, 8 Kas. 580. To the petition in this case defendant answered, and the case went to trial before the court and a jury. After the plaintiff had rested, defendant interposed a demurrer to plaintiff’s evidence, which after argument, was sustained, and judgment entered for defendant. To reverse this ruling plaintiff brings the record to this court.
ment; when no action against ?vitn¿s.lins *455 2. Heading; pioof' *454 The first question which we shall examine is, whether the plaintiff’s claim of a false imprisonment can be sustained. The statute under which this prosecution was commenced, makes it a misdemeanor for a party to cut down timber in which he has no interest or right, and which is standing or being on land not his own; and the affidavit which was filed in this action, alleged that defendant did unlawfully cut down and carry away certain trees standing and growing on the land of another person, and in which defendant had'no right or interest. The affidavit in this respect substantially follows the language of the statute; but it is objected that it is fatally defective, in that it fails to allege upon whatjland these trees were growing, or to whom either the land or the trees belonged. In other words, the charge as stated in the complaint lacked that certainty, and failed to give to the defendant that information which, under the constitution of the state, every defendant in a criminal prosecution is entitled to have. As the warrant followed the language of the complaint, it is claimed that upon the face of the papers the fatal defect in the proceedings was disclosed; that therefore the arrest and detention were illegal, and that a case of false im- c prisonment is made out. We cannot yield our assent to the propositions thus advanced by coun- ^ » seb Conceding that the complaint is defective, and that to be complete it should have stated the land on which the trees were growing, or the owner of the *455 trees, or both, still it was an attempt to charge an offense under the statute, and contained allegations sufficient to challenge judicial examination and action. The defect was one which could have been cured by amendment. The language of the complaint followed that of the statute; it charged the doing of all the acts which the statute prohibited. Indeed, the trouble is that it followed it too closely, following the letter and not the spirit; but it was enough to invite the examination and consideration of the justice, and was in the first instance examined and approved by him. Under these circumstances an action for false imprisonment will not lie. This question has already been settled in this court, on behalf of the magistrate, (Clark v. Spicer, 6 Kas. 440,) and on behalf of the prosecuting witness, (Gillett v. Thiebold, 9 Kas. 427.) See also Hauss v. Kohlar, 25 Kas. 644. It is no uncommon thing for some defects or omissions to be found in a complaint, or even in an information or indictment, defects sufficient to compel the sustaining of a motion to . quash proceedings. If in all these cases an action for false imprisonment could be maintained, it would throw an unnecessary and unreasonable check on proper criminal prosecutions. The action for malicious prosecution is ample protection to the defendant, against an unwarranted and improper prosecution, and the prosecuting witness ought not, any more than the magistrate, to be compelled to guarantee the absolute sufficiency of the complaint, as prepared by the prosecuting officer. If in good faith a prosecution is commenced, and an offense so stated that the defendant is advised ■of the character of the complaint against him, the fact that there may be some technical omission, or that the complaint lacks absolute completeness, ought not to be sufficient to sustain an action for false imprisonment. Hence, we conclude that the ruling of the district court, so far as the cause of action was for false imprisonment, was correct. (Outlaw v. Davis, 27 Ill. 466; Von Kettler v. Johnson, 57 Ill. 109; Goodwin v. Stephens, 63 Ind. 112; Ressler v. Peats, 86 Ill. *456 275; Murphy v. Walters, 34 Mich. 180; Redmond v. The State, 12 Kas. 172; Johnson v. Maxon, 23 Mich. 129.)
3. Malice, ques-jury*0error Passing now to the charge of a malicious prosecution, if in that we accepted the court’s statement of its findings and the reasons therefor as full and correct, we should be compelled to reverse its ruling. In passing upon the demurrer, the judge said that he was of the opinion that there J ° , , . r , . .. was n0 probable cause, and upon the question or . malice that there was some testimony bearing directly upon this question, and after referring to the statements of the defendant, inquires how they shall be construed — whether as indicative of malice, or simply as showing a mistake, and then goes on to say that he has known the defendant a long time, knowing him to be a good citizen — peaceable, not contentious, considerate, and careful; that if the defendant were a stranger, he would leave the question of malice to the jury; but having known the defendant for years, he could not impute malice to such a man, and that if the jury, upon the testimony, found against him, he should not feel warranted in sustaining the verdict, and therefore felt compelled to sustain the demurrer. Now if we accept this statement as correct, obviously the court erred; for if there was no probable cause and there was testimony bearing directly upon the question of malice, then the case should have gone to the jury for its verdict; and the court may not interpose its personal knowledge either to prevent such verdict or to set it aside. Every party must go into court as though he were a stranger to the court, and as though it had no knowledge of his character or disposition. Thus, and thus only, can all parties stand alike and receive equal justice in the administration of the law. If the testimony leaves an open question as to whether the defendant was actuated by malice or not, the jury was the tribunal to determine that question; and while the court may interpose to set aside a verdict, and ought to do it if not fairly sustained by the testimony, yet it may not interpose its personal knowledge, either to withhold the question from the jury or to disturb the.conclusion to which that jury has arrived. Counsel *457 for defendant in error recognize this fact, and have filed an elab- . rate brief and made a strong argument to show that the court, was mistaken when it said that there was no probable cause. In order to obtain a clear understanding of this argument and these claims, a brief statement of the facts-is essential. It appears that the plaintiff was the owner of á tract of land near the borders of which was growing a large cottonwood tree. The tract adjoining belonged to one Clark, a resident of Illinois, and had been for years under the care and charge'of his-brother-in-law, one R. H. Bishop, a resident of Salina. This cottonwood tree, which was a large and conspicuous one, was supposed by Mr. Bishop to be on the land of which he had the charge, while in fact, as examination made subsequent to the commencement of the criminal action showed, it was upon the land of Schippel. J. I. Norton, a millwright in Salina, also supposing that this tree was on the land of Clark, went to Mr. Bishop and purchased it. Having purchased it, he placed his son, and the plaintiff, a hired man in his-employ, at work cutting it down and cutting it up into cord wood for family use. They went in broad daylight and cut. the tree down, were at work two days in cutting it down and cutting it into cord wood, and had hauled some of it to-the house of Mr. Norton. The third day, while still at work on the tree, Mr. Schippel came up and demanded by what authority they were cutting his timber. They told him that. Mr. J. I. Norton had purchased it from Mr. Bishop, and that, they were cutting it down for him. Some words ensued, and Mr. Schippel left, saying that he was going to the city to have them prosecuted for cutting his timber. The young men immediately quitted work and hunted up Mr. J. I. Norton, and told him of what Mr. Schippel had threatened. In the meantime Mr. Schippel had been to Salina, gone to the office of' the county attorney, had a complaint written out, and with Mr. Clawson, an attorney in the office of the county attorney, had started after a justice of the peace to institute this prosecution. While in the office of the justice, and before the filing of any complaint, Mr.- J. I. Norton came in and stated. *458 the facts; whereupon the attorney said that that placed the matter in a different light, and left the office. No prosecution was then commenced. Mr. Bishop, also, who was a justice of the peace in Salina, saw Mr. Schippel and informed him as to the facts. Both Mr. Norton and Mr. Bishop insisted that the tree was on the land of Clark, but told Mr. Schippel that if it was on his land, he could have the five dollars for which the tree had been sold. Thus the matter rested during this day, but some days after Mr. Schippel filed an affidavit, caused a warrant to be issued, and the plaintiff to be arrested. The ■case went to trial; but an objection having been sustained to the introduction of testimony, the county attorney dismissed the action, and plaintiff was discharged from custody. Now counsel for defendant in error insist that the court was mistaken when it ruled that there was no probable cause of action shown, and for three reasons: They say, first, as a matter of fact, the tree was upon Schippel’s land; that therefore, irrespective of any question of intent or of knowledge on the part of plaintiff that the tree was on Schippel’s land, the •offense prohibited by the section of the statute was committed; ■second, that Mr. Bishop had no right to dispose of timber on the Clark land, and both he and J. I. Norton knew it; that the supposed purchase would give no right to cut the tree down, even if it had been on Clark’s land, and that Schippel was not bound to take these statements of Bishop and J. I. Norton as satisfactory explanation of the acts and •conduct of the plaintiff; and third, that there was no pretense of purchasing more than the one large cottonwood tree, and that as a matter of fact the plaintiff and Norton’s son cut ■down at least one other tree and carried it to the house of Mr. J. I. Norton.
In support of the first proposition, counsel cite a large number of cases in which the absence of a criminal intent on the part of the defendant was held no excuse, as in the case of the sale of adulterated milk, (Commonwealth v. Smith, 103 Mass. 444;) as in the case of selling liquor to minors, (Jamison v. Burton, 43 Iowa, 282; McCutcheon v. The People, 69 Ill. 601;) *459 though contra, Miller v. The People, 3 Ohio St. 475. It is unnecessary to review these authorities, or consider how far they rest upon sound principles; for the case at bar does not come within the scope of any of these decisions, or within the reach of the principles upon which they are supposed to rest. The rule, as deduced from the authorities, is thus stated in 3 Greenleaf on Evidence, § 21:
“Ignorance, or mistake of fact, may in some cases be ad • mitted as an excuse; . . . this rule would seem to hold •good in all cases where the act, if done knowingly, would be ■malum in se. But where a statute commands' that an act be •done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the ■crew, the owner and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred, notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police, and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted; for the law, in’ these •cases, seems to bind the party to know the facts, and to obey the law at his peril.”
4'inain£i’ow]-m But the act charged against the defendant in the criminal, •case was an act which, independent of the statute, is wrong. It involved moral turpitude. It was malum in se, as well' as malum prohibitum. To go upon a man’s farm and steal his horse and carry it off involves no more moral turpitude than to go upon the same farm, cut down his timber and carry it •off. In either case, it is a wrongful appropriation of another’s property; and whether it be classified by the statute as trespass -or felony, it is inherently a wrong and essentially •dishonest act. The section is not a mere police regulation, ' like requiring a party, tinder penalty, to keep the sidewalks in a city clean; but it is an act for the protection of property against the depredations of a wrong-doer. In such a case, a knowledge of the wrongful character of the act is essential to the commission of an offense *460 under the statute. If one or two neighbors, acting in good faith, and in an honest mistake as to the true boundary-line, should cut down timber on what he supposed was his-own land, it would be harsh indeed, if he could thereafter, on the running of the survey and the establishment of the true boundary line, be held liable to criminal prosecution and punishment as a wrong-doer in cutting down such timber.
The case comes within the rule as laid down in 3 Green-leaf, §13:
“Another cardinal doctrine of criminal law, founded in natural justice, is, that it is the intention with which an act was done, that constitutes its criminality. The intent and the act must both concur, to constitute the crime. Actus nonfacit reum, nisi mens sit rea.”
The second reason given by counsel fails also with the first. It matters not that Mr. Bishop may not have had absolute-authority to make the sale of trees growing on the Clark land. It is enough that he supposed that-he had such authority, and, acting in good faith, sold the tree to Mr. Norton. For in that event, there was neither criminal intent nor knowledge on the part of Norton or his employés. They were doing what they supposed they had a right to do — taking possession of timber which they- had purchased from one known to represent the owner, and claiming the authority to sell it.
*461 5' wnoufi!b?er" to criminal whenCutlon’ *460 In reference to the third reason, the testimony disclosed these facts: While the criminal complaint which was filed charged the cutting and carrying away of five trees, the testimony adduced by plaintiff showed that, in addition to the cottonwood tree which had been purchased, plaintiff and young Norton cut nothing else except a small hackberry, some five or six feet in height, the top of which had been broken off, and which stood in the way of their getting at the cottonwood. Now whether the cutting down this hackberry was an act of which Clark could have complained, providing the tree had stood upon his land, as was supposed, is immaterial; for it was all done in pursuance of supposed authority from the supposed owner, and certainly implies no criminal knowledge *461 as against Mr. Schippel, or any criminal intent to deprive him of his property. "We think, therefore, that none of the reasons given by counsel is sufficient, and that the district court was right when it said that upon the testimony presented there was.no probable cause. For certainly if these parties, acting in good faith, and under authority r ° ° J from the supposed owner, were cutting down this ■ timber,- there was no criminal intent or criminal knowledge in their acts. In reference to the question of malice, we also think the district court was correct in ruling that there was testimony bearing directly upon the question of malice; and, as we have said before, if there was such testimony, it presented a question which must go to the jury for their determination. It follows from these considerations that the district court erred in its ruling, and that the judgment must be reversed, and the case remanded with instructions to grant a new trial.
In conclusion, we may say in reference to the general ques- • tions involved in this ease, that no unreasonable restrictions should be placed upon honest prosecutions for supposed criminal offenses; that those who have knowledge of the commission of crime, or have good reason to suspect the commission of crime, should not be deterred from making complaint thereof through fear of subsequent personal liability. And on the other hand, it is equally necessary for the protection of the liberty of each citizen, the preservation of his good name and reputation, that when it is perfectly clear that there was no criminality in his acts, he should not be burdened with the load of a criminal prosecution. We know none of the parties involved in this transaction; nothing of their character or reputation in the community. If it be true, as Mr. Schippel states, that he had suffered from previous depredations upon his timber, he had a right, when acting in good faith, to commence criminal prosecutions against any party whom he had good reason to believe was guilty of such depredations. On the other hand, the fact that he had previously suffered from the wrongful acts of some persons unknown, *462 would not justify him in commencing a criminal prosecution against parties who were in fact innocent of crime, and whom he must, acting as a reasonable man, have believed to be innocent. It is doubtless true, as counsel say, that a party is not bound to believe an apparent wrong-doer innocent of crime because another party says he is innocent, for such other party may himself be equally culpable, or may be simply seeking to shield the wrong-doer; but a party, on the other hand, may not unreasonably disbelieve the statements of citizens of recognized character and reputation. Now whether Mr. Bishop and Mr. J. I. Norton were men whose standing and reputation in the community were so well established, so well known to Mr. Schippel as well as to others, that he ought to have accepted those statements as true, is a question which, under the Full light oF all the testimony that may be offered, must be submitted to a jury. If there was anything in that standing or reputation; anything in their statements or conduct; anything in the acts or statements of the plaintiff in this case which justified Mr. Schippel as a reasonable man in discrediting the explanation, and in believing that the parties were in fact guilty of the crime, then it may be that he was justified in his insisting upon the prosecution ; but if everything was such that he ought to have credited the explanation as satisfactory, he was not justified in prosecuting innocent men on the ground that he had previously suffered from the wrongs of guilty ones. That is not the way to make examples, ot deter from crime. It is of course well settled, that to sustain an action for a criminal prosecution, both malice and want of probable cause must be proved; (Malone v. Murphy, 2 Kas. 250;) but if both these existed, and the jury are satisfied from the testimony that both did exist, the plaintiff was entitled to a verdict.
The judgment will therefore be reversed, and the case remanded for a new trial.
All the Justices concurring.