### THE STATE OF KANSAS v. JOHN BROWN.

1. DRUNKENNESS—*Valid Statute.* Chapter 104 of the Laws of 1883, punishing drunkenness in certain cases, is constitutional and valid, and the information in the present case charges an offense under it.

2. ———— *Defense.* Where a person is charged with the offense of being drunk in a public place, the defendant may show as a part of his defense that he became intoxicated through an honest mistake of fact.

*Appeal from Chase District Court.*

PROSECUTION for drunkenness. From a conviction and sentence at the June Term, 1887, the defendant *John Brown* appeals. The opinion contains a sufficient statement of the facts.

*T. H. Grisham,* and *J. V. Sanders,* for appellant.

*John Madden,* county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution, brought in the district court of Chase county, wherein the defendant, John Brown, is charged with a violation of the provisions of chapter 104 of the Laws of 1883. (Comp. Laws of 1885, ch. 31, § 362.) The statute reads as follows:

"SECTION 1. If any person shall be drunk in any highway, street, or in any public place or building, or if any person shall be drunk in his own house, or any private building or place, disturbing his family or others, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding twenty-five dollars, or by imprisonment in the county jail for a period not exceeding thirty days."

The information contains two counts, in the first of which the defendant is charged with the offense of being drunk in a street in the city of Cottonwood Falls. In the second he is charged with the offense of being drunk in the court house in said city. A trial was had before the court and a jury, and the defendant was found guilty "as charged in the information," and was sentenced to pay a fine of $10 and the costs of suit, and to stand committed to the county jail until such fine and costs were paid. From this sentence he now appeals to this court.

Before the trial in the court below the defendant filed a motion to quash the information, upon the ground that it did not set forth facts sufficient to constitute a public offense, which motion was overruled by the court; and this ruling is alleged for error. It is claimed that the information is insufficient, and should have been quashed for the following reasons: (1.) It does not state that the defendant was at any time disturbing his family or others. (2.) It does not describe or give the name of the street in which the defendant was drunk. (3.) The act itself under which the defendant is pros-

ecuted is void for the reason that it contravenes § 16, article 2 of the constitution. (4.) The act is also void if construed as the prosecution construes it, for the reason that with such a construction it would inflict a cruel and unusual punishment. (5.) Both the act and the informa- tion are void because of the indefiniteness of the word "drunk." We think the act is valid, and the informa- tion sufficient.

1. Drunkenness —valid stat- ute.

The next question is a more difficult one. It is whether a person may be guilty of the offense forbidden by the statute, where he innocently drinks the liquor which intoxicates him, without having any knowledge of its intoxicating qualities, and without having any idea that it would make him drunk. The court below, over his objections and exceptions, excluded nearly all the evidence offered by him to show his ignorance of the intoxicating character of the liquor, and its possible power to produce drunkenness; and the court also gave, among others, the following instruction to the jury, to wit:

"The defendant's ignorance of the intoxicating character of liquors drunk by him, if he did drink any such, is no excuse for any drunkenness resulting therefrom, if any did so result."

It has always been a rule of law that ignorance or mistake of law never excuses, and this with a kindred rule, that all men are conclusively presumed to know the law, is founded upon public policy and grounded in necessity; but no such rule is invoked in this case. The question in this case is sim- ply whether ignorance or mistake of *fact* will excuse. It is claimed by the prosecution that it will not, and this on account of the express terms of the statute. The statute provides in express terms, and without any exception, that "if any person shall be drunk," etc., he shall be punished. And it would seem to be contended that there can be no exceptions. But are idiots, insane persons, children under seven years of age, babes, and persons who have been made drunk by force or fraud, and carried into a public place, to be punished under the statute? And if not, why not? And if these are not to be punished, then no sufficient reason can be given for pun-

ishing those who have become drunk through unavoidable accident, or through an honest mistake? Of course the legislature has the power to provide for the punishment of "any person" who may be found drunk in a public place, whatever may be his age or mental condition, or in whatever manner he may have become drunk; and it is also for the legislature to determine whether the public exigencies are such as to require that injustice shall be done to innocent individuals by inflicting upon them unmerited punishment. But we should never suppose that the legislature intended to punish the innocent unless particular words are used that will bear no other construction. General terms inflicting punishment upon "any person" who might do any particular act should be construed to mean only such persons as-act voluntarily and intelligently in the performance of the interdicted act. We should not suppose, in the absence of specific words saying so, that the legislature intended to make accidents and mistakes crimes. Human actions can hardly be considered as culpable either in law or in morals, unless an intelligent consent of the mind goes with the actions; and to punish where there is no culpability would be the most reprehensible tyranny. The legislature usually in enacting criminal statutes, enacts them in general terms so as to make them by their terms include all persons; and yet it is always understood that some persons, as idiots, insane persons, young children, etc., are not to be considered as coming within the provisions of the statute. It is always understood that the courts will construe the statute in accordance with the general rules of statutory construction, and apply the act only to such persons as the legislature really intended to apply it; that is, to apply the act to such persons only as should intelligently and voluntarily commit the acts prohibited by the legislature. And it is generally better that the exceptions to the operation of the statute should not be stated in the statute itself, for if they are, then it becomes necessary for the public prosecution to also state them in the complaint. If idiots, insane persons, children, etc., are in terms excepted from the provisions of the statute, then it would be necessary for the

public prosecutor to see that all informations or indictments, charging the particular offense, should substantially follow the language of the statute, and should also state the exceptions as a part of the description of the offense. He should allege that the case did not come within any of the exceptions. And he would also have to prove the same. But where the exceptions are not stated in the statute, the complaint may charge the offense substantially in the language of the statute, and without mentioning any of the exceptions, and then, if the defendant claims that the case comes within any of the exceptions, he must prove the same as a part of his defense.

With respect to punishment notwithstanding ignorance or honest mistake of fact, Mr. Joel Prentiss Bishop, one of the ablest and most philosophical law-writers of this country, uses the following language:

"A statute general in its terms is always to be taken as subject to any exceptions which the common law requires. Thus, if it creates an offense, it includes neither infants under the age of legal capacity; nor insane persons; nor, ordinarily, married women acting in the presence and by the command of their husbands. If it creates a forfeiture, it does not apply to women under coverture." (Bish. Stat. Cr., § 131.)

"In the law of crime, the maxim is *ignorantia facti excusat*. As expressed by Gould, J.: 'Ignorance or mistake in point of fact is, in all cases of supposed offense, a sufficient excuse.' To punish a man who has acted from a pure mind, in accordance with the best lights he possessed, because, misled while he was cautious, he honestly supposed the facts to be the reverse of what they were, would restrain neither him nor any other man from doing a wrong in the future; it could inflict on him a grievous injustice, would shock the moral sense of the community, would harden men's hearts, and promote vice instead of virtue." (1 Bish. Cr. L., § 301.)

"What is absolute truth, no man ordinarily knows. All act from what appears, not from what it is. If persons were to delay their steps until made sure, beyond every possibility of mistake, that they were right, earthly affairs would cease to move; and stagnation, death and universal decay would follow. All, therefore, must, and constantly do, perform what else they would not, through mistake of facts. If their minds

are pure, if they carefully inquire after the truth but are misled, no just law will punish them, however criminal their acts would have been if promoted by an evil motive, and executed with the real facts in view.  In the law, therefore, the wrongful intent being the essence of every crime, it necessarily follows, that, whenever one is misled, without fault or carelessness, concerning facts, and, while so misled, acts as he would be justified in doing were they what he believes them to be, he is legally innocent, the same as he is innocent morally.  The rule in morals is stated by Wayland to be, that, if a man 'know not the relations in which he stands to others, and have not the means of knowing them, he is guiltless.  If he know them, or have the means of knowing them and have not improved these means, he is guilty.'  The legal rule is neatly enunciated by Baron Parke thus: 'The guilt of the accused must depend on the circumstances as they appear to him.'  This doctrine prevails likewise in the Scotch law, as it necessarily must in every system of christian and cultivated law."  (1 Bish. Cr. L., § 303.  See also the able and exhaustive note appended to § 303a.)

The following, among other cases, tend to support the views expressed by Mr. Bishop: *Farrell v. The State*, 32 Ohio St. 456; same case, 30 Am. Rep. 614; *Miller v. The State*, 3 Ohio St. 475; *Brown v. The State*, 24 Ind. 113; *Faulks v. The People*, 39 Mich. 200; same case, 33 Am. Rep. 374; *People v. Parks*, 49 Mich. 333; *Commonwealth v. Presby*, 14 Gray, (80 Mass.,) 65; *Duncan v. The State*, 7 Humph. 148; *Dotson v. The State*, 6 Coldw. 545; *Birney v. The State*, 8 Ohio, 230; *Price v. Thorton*, 10 Mo. 135; *Commonwealth v. Stout*, 7 B. Mon. 247; *Stern v. The State*, 53 Ga. 229; *The State v. Hause*, 71 N. C. 518; *Cutter v. The State*, 36 N. J. L. 125.  See also the case of *Wagstaff v. Schippel*, 27 Kas. 450.

There are also many cases in opposition to the views expressed by Mr. Bishop, nearly all of which are cited in a note to the case of *Halstead v. The State*, 10 Cent. L. J. 290, 294. The decisions in Massachusetts, and also in Michigan, are to some extent contradictory and conflicting.  There are cases in each of these states which support and others which oppose the views expressed by Mr. Bishop.  In Massachusetts and in Michigan is found the greatest departure from the doctrine

enunciated by Mr. Bishop. In Massachusetts, where a man and a woman were married and afterward lived together in the utmost good faith as husband and wife, it was held that the man was guilty of adultery, because the woman at the time of the marriage had a husband living, although she did not know it, although from evidence satisfactory to her she believed him to be dead, and although she had not seen him or heard from him for more than eleven years. (*Commonwealth v. Thompson*, 11 Allen, [93 Mass.,] 23.) And in Michigan it has been held that a hotel-keeper, who also kept a bar for the sale of spirituous liquors, might be convicted and punished for keeping an open saloon on Sunday, because his clerk, who was employed only for legal purposes, opened the bar-room and sold a single drink of whisky on Sunday without the knowledge or consent of the hotel-keeper. (*The People v. Roby*, 52 Mich. 577.) Mr. Greenleaf, in his work on Evidence, uses the following language:

"*Ignorance or mistake of fact* may in some cases be admitted as an excuse; as, where a man intending to do a lawful act, does that which is unlawful. Thus, where one being alarmed in the night by the cry that thieves had broken into his house, and searching for them, with his sword, in the dark, by mistake killed an inmate of his house, he was held innocent. So if the sheep of A stray into the flock of B, who drives and shears them, supposing them to be his own, it is not larceny in B. This rule would seem to hold good in all cases where the act, if done knowingly, would be *malum in se*. But where a statute commands that an act be done or omitted, which in the absence of such statute might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owner and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted; for the law in these cases seems to bind

the party to know the facts and to obey the law at his peril."
(3 Greenl. Ev., § 21.)

To sustain the latter portion of this section, Mr. Greenleaf
cites only Massachusetts cases, which undoubtedly sustain the
proposition.    But has not the supreme court of Massachusetts
gone astray?    The first part of the foregoing section we think
is unquestionably correct, and the present case falls within it.
Voluntary drunkenness in a public place was always a mis-
demeanor at common law; and it was always wrong morally
and legally.    It is *malum in se.*    Therefore, under either the
rule enunciated by Mr. Bishop, or the one enun-
2. Defense.          ciated by Mr. Greenleaf, this case was erroneously
tried in the court below.    Whether the latter portion of said
section of Mr. Greenleaf's Evidence is correct or not, it is not
necessary for us now to decide.    Whether a party who, through
an honest ignorance or mistake of fact, commits an act which
is only *malum prohibitum,* may be punished for the act or not,
it is not necessary now to determine.    Mr. Bishop would say
not.    Mr. Greenleaf, following the Massachusetts supreme
court decisions, would say he should be.    Mr. Bishop's views
are more in consonance with justice.

Before closing this opinion, it might be well to state that
the fact that the defendant became intoxicated through an
honest mistake, might not constitute a complete defense to the
action.    If after becoming drunk, he was still sufficiently in
the possession of his faculties to know what he was doing, and
to know the character of his acts, and went voluntarily into
a public place, he would be guilty.

The judgment of the court below will be reversed, and the
cause remanded for a new trial.

All the Justices concurring.