275 P.2d 389

**PACIFIC EMPLOYERS INSURANCE COM-
PANY, a corporation, Appellant,**

**v.**

**Elizabeth Baughn MORRIS, Administratrix,
c. t. a. of Otis J. Baughn and Mary Fair-
hurst Baughn, deceased, Appellee.**

**No. 5679.**

Supreme Court of Arizona

Oct. 25, 1954.

Fennemore, Craig, Allen & Bledsoe, Phoenix, for appellant.

Shimmel, Hill & Hill, Phoenix, for appellee.

PHELPS, Chief Justice.

On February 11, 1948, a car conveying Otis J. Baughn and Mary Fairhurst Baughn, his wife, from Los Angeles to Phoenix and driven by Otis J. Baughn collided with a truck belonging to the Roscoe Moss Company, a corporation, and driven by one Adelbert J. Jones. The collision occurred near Wittman on U. S. Highway 60–70 approximately 20 miles southeast of Wickenburg. The truck was badly damaged. The owner carried insurance against property loss with the plaintiff insurance company who paid said owner the loss sustained in the sum of $5,370.50. The insurer now seeks through subrogation to recover said amount from the estate of Otis J.

Baughn and Mary Fairhurst Baughn upon the ground of their alleged negligence in the operation of their car at the time and place. Defendant pleaded among other things an unavoidable accident.

The facts are that the truck, a Kenworth, pulling a Frehauf semi-trailer, having an aggregate weight of about 38,000 pounds was proceeding toward Wickenburg at a speed of approximately 47 m.p.h. About 8 o'clock p.m. the driver of the truck observed the headlights of the Baughn car, a 1946 Plymouth sedan, approaching from the opposite direction when it was about a mile distant. The truck was at all times herein mentioned in its proper and lawful position on the right of the center of the highway. The Baughn car proceeding toward Phoenix remained on its right side of the center of the highway until it was within about 100 feet of the truck when it suddenly swerved across the center of the highway at an angle. At that time it appeared to be traveling about 35 m.p.h.

When the front wheels of the Baughn car were 11 feet over the center line of the highway and in the lane being used by the truck traveling in the opposite direction, the right front end of the truck collided with the right side of the Baughn car just in front of the right front door. The truck and car came to rest on the north side of the highway about 50 feet from the point of impact. The front of the truck was resting slightly on top of the Baughn car.

An examination of the highway disclosed no indication that the Baughn car was in distress as it approached the truck. There were no skid marks or scratches on the highway over which it traveled. The road at that point was straight for miles and the Baughn car seemed to be traveling normally until it turned across the center line.

The Baughn car caught on fire and the driver of the truck extinguished the fire and then by use of a flashlight saw the dead bodies of Judge and Mrs. Baughn in an upright position in the car. Judge Baughn was under the wheel leaning against the left door of the car and Mrs. Baughn was lying over against him. He said she was bleeding profusely but Judge Baughn had bled very little. The truck driver only saw a cut on Judge Baughn's forehead about one inch long from which there was a trickle of blood. He saw no other evidence of injury. However, it was developed by other witnesses that the right side of the head of both Judge and Mrs. Baughn had been badly crushed, and that there were other cuts and bruises on their heads and faces. All witnesses testified that Mrs. Baughn bled profusely, some of which was on Judge Baughn but that he had bled very little. So noticeable was the failure of Judge Baughn to bleed that it caused considerable comment among those who saw the bodies. No autopsy was had. The cause was tried to a jury which returned a verdict for defendant and judgment was rendered thereon. From such judgment

and from the order denying plaintiff's motion for a new trial plaintiff appeals.

Plaintiff assigns a number of errors which we will consider in the order presented.

First, it is claimed in assignments of error 1, 2 and 3 that the court erred in denying plaintiff's motion for a directed verdict at the close of all the evidence; in denying its motion for judgment in accordance with directed verdict; in denying its motion for judgment n.o.v. and in denying its motion for a new trial. These motions are based upon the ground that the verdict and judgment were contrary to and not justified by the evidence.

In support of its position it is urged that the truck was being driven at the time of the accident in a lawful and proper manner on its right side of the road and that the accident occurred completely on the side of the road rightfully occupied by plaintiff's truck. These facts must be conceded and it must be further conceded that the collision between the truck and the Baughn car was proximately caused by the swerving of the Baughn car to the wrong side of the road and directly into the path of the truck.

It follows that unless Judge Baughn was dead at the time the collision occurred or unless a tire blew out or some defect in the mechanism of his car occurred which made it impossible for him to control its course and which caused it to travel directly into the path of the truck, Judge Baughn was guilty of negligence and his estate must answer in damages for the injury to plaintiff's truck.

There is no evidence either oral or physical of a blowout or of a defect in the mechanism which caused the car to swerve across the road at an angle a distance of 11 feet across the center line of the highway directly into the path of the truck. There were no marks or scratches on the pavement at that point. The evidence is that the car just seemed to travel along the road by itself as it approached and crossed to the wrong side of the road. There is no claim by either party that the swerving of the car across the highway was due either to a blowout or to the defective mechanism of the car.

■ If Judge Baughn deliberately drove his car onto the wrong side of the road he was guilty of negligence. No one intimates this as a possibility. Or if he went to sleep while driving and thus permitted the car to cross to the wrong side of the road he was guilty of negligence and in such event plaintiff should prevail.

■ We believe the question resolves itself into one of two alternatives, to wit, that Judge Baughn was either negligent or he was dead at the time the accident occurred. If he was dead at the time he could not be guilty of negligence even though his car, being on the wrong side of the road directly in front of the truck, was the proximate cause of the collision and consequent damage to the truck.

28

■ In returning a verdict for defendant the jury had to find that Judge Baughn was dead before the collision occurred. Under no other set of facts could it have reached such a verdict. Therefore if there is any substantial evidence to sustain its finding we may not disturb its verdict. If from the evidence reasonable men could draw either the inference that Judge Baughn was dead at the time his car swerved across the road or that he was alive at said time we are without authority to disturb such verdict.

In support of defendant's claim that Judge Baughn was dead prior to the collision of his car with the truck the defendant presented Dr. Harry J. Felch, a prominent Phoenix physician of more than thirty years' experience as a physician and who had known Judge Baughn for a great many years but had not been his physician except for minor ailments until December, 1947, when Judge Baughn, then 70 years of age, was ill with flu and pneumonia and was said by Dr. Felch to be in a dying condition for many days during the latter part of December and the first part of January. Dr. Felch attended him during this illness. He stated as a fact that Judge Baughn's illness did affect his heart, lungs and all parts of his body and gave as his opinion that after such illness he was susceptible to heart attack, stroke, or anything that would cause sudden death.

In answer to a hypothetical question Dr. Felch stated that in his opinion Judge Baughn had been dead seconds before the impact occurred between his car and the truck. He based his opinion primarily upon the fact that Judge Baughn bled very slightly after the impact although the right side of his face was badly crushed and other cuts and bruises appeared on his head and face. The evidence showed that Mrs. Baughn whose head was crushed on the right side and who had cuts and bruises on her face and head bled very profusely. He stated it to be a scientific fact that when the heart ceases to beat the blood ceases to flow through the veins and arteries of the body much the same as cutting off the pressure in a water hose would cause the water in it to cease to flow.

■ Counsel for plaintiff objected to the sufficiency of the hypothetical question propounded to Dr. Felch but neglected to point out in what particular it failed to meet the legal requirement of a hypothetical question as the rule requires. Cobb v. Spokane, P. & S. Ry. Co., 150 Or. 226, 44 P.2d 731. The court in its discretion overruled the objection and seems to have treated the question as adequate. A study of the question as propounded leads us to the conclusion that it was adequate. This being true, we believe there was substantial evidence presented to the jury to sustain the verdict and we are without authority to disturb such finding unless the court committed reversible error in some other particular.

Counsel for plaintiff claims it was reversible error for the court to permit the

administratrix and her brother, Alfred F. Baughn, to express their opinion, over the objection of plaintiff, that their father, Otis J. Baughn, was a careful and prudent driver.

■ We agree with this contention. There is a line of cases which hold that in accidents of this kind where there are no eye-witnesses, evidence of the previous habits of a deceased driver are admissible in evidence. This rule has no application to the instant case for the reason that the driver of the truck involved witnessed the accident, observed the approach of the Baughn car for a distance of about a mile and testified that he observed nothing abnormal about its course. We elect to follow the rule that under such circumstances the driver of the truck is an "eye-witness" and it therefore removes this case from the category in which the "no eye-witness rule" could under any circumstances be invoked.

■ We are unable to say that the jury would have reached the same verdict if the evidence of these witnesses had been rejected. It was error to admit their testimony and we feel constrained to reverse the case upon that ground.

Because this necessitates a new trial we will rule upon the other assignments.

■ We are definitely of the view that, in the absence of a request therefor, no duty devolved upon the trial court to instruct the jury that when a person is shown to be alive he is presumed to live until he is shown to be dead.

■ Defendant complains of the court's refusal to give the following requested instruction:

"You are instructed that the fact that some of the parties in this action are corporations must have no effect upon your verdict. Corporations and individuals alike are entitled to exactly the same fair and impartial treatment in your deliberations."

This is a proper instruction to be given but we are of the view that failure to give it here was not prejudicial to the plaintiff in view of the language used by the court in giving the following instruction:

" * * * You must weigh and consider this case and render your verdict without regard to sympathy, prejudice, or passion for or against either party to this action."

Assignment of error No. 8 is directed at defendant's requested instruction No. 12 reading as follows:

"You are instructed that the law as to drivers of motor vehicles is not different from that which governs other persons. The standard required is that of a reasonably prudent person under all the circumstances. If some unforeseen emergency or act of God occurs which overpowers the judgment of the ordinary careful driver, or renders him incapable of control of a motor vehicle, so that for a time he is not capable of independent action or any action in controlling a motor vehicle, and as a

result injuries are inflicted upon another or his property, then such driver is not negligent, * * *."

The above assignment of error is based upon the ground that the instruction "is not a proper statement of the law and is not applicable to the proven facts, and for the further reason that it unduly reiterates the other instructions of the court concerning unavoidable accident and due care."

All of the members of the court have had considerable experience in the trial courts of the state and we know of no case involving an accident where motor vehicles of the character here concerned in which a higher duty has been imposed upon an automobile driver than that of ordinary care under the circumstances surrounding the individual at the time, i. e., the care exercised by an ordinary prudent man. The degree of care to be used, of course, varies with changing circumstances. What would be ordinary care in one situation would constitute gross negligence under another. We find no fault with this instruction upon the ground that it is not a correct statement of the law. Nor are we able to agree with counsel that it has no application to the proven facts in the case. The instruction measures the standard or degree of care required of the defendant at the time and place if he was alive, and it is the theory of plaintiff that he was then alive.

The last portion of the instruction has to do with a situation wherein the driver is rendered incapable of control of a motor vehicle which is clearly applicable to the facts of the case under the testimony of Dr. Felch. We have carefully read all of the instructions given by the court and we are unable to find anything therein that could be considered as reversible error.

Judgment reversed with directions to grant a new trial.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.