[No. 37100. Department One. January 7, 1965.]

GERTRUDE M. KAISER, *Respondent and Cross-appellant*, v. SUBURBAN TRANSPORTATION SYSTEM, *et al., Appellants,* GROUP HEALTH COOPERATIVE OF PUGET SOUND *et al., Respondents.*\*

*Reported in 398 P. (2d) 14, 401 P. (2d) 350.

*Lycette, Diamond & Sylvester* and *George W. Wilkins*, for appellants.

*Burgess & Hallin (William C. Hallin*, of counsel), for respondent and cross-appellant.

*Williams, Lanza, Kastner & Gibbs*, by *Paul C. Gibbs*, for respondents Faghin and Group Health Cooperative of Puget Sound.

HUNTER, J.—The plaintiff, Gertrude M. Kaiser, was injured while a passenger on a Suburban Transportation System bus when the bus driver, Richard Wagner, lost consciousness and the bus struck a telephone pole. This lapse of consciousness can be attributed to the side effects of a drug (pyribenzamine) which had been prescribed by

his doctor, Jack Faghin, for the treatment of a nasal condition. The driver testified that the doctor gave him no warning concerning possible side effects of the drug, and that he took the first pill on the morning of the accident. A few miles before the accident he felt groggy and drowsy, and then he noticed that his lips and tongue were dry. He blacked out or went to sleep shortly before his bus left the road.

The plaintiff (respondent and cross-appellant), brought this action against the bus company and the driver, and, in the alternative, against the doctor and the doctor's employer, Group Health Cooperative of Puget Sound, defendants (respondents). The bus company and driver answered and cross-complained against the doctor and Group Health, alleging that the sole cause of the accident was the negligence of the doctor. The doctor and Group Health denied negligence and claimed that the driver was hypersensitive to pyribenzamine. The doctor and Group Health were dismissed at the conclusion of the evidence on the grounds that the evidence did not show any standard of care to which the doctor was bound, and that even if negligent in giving no warning, the driver's negligence by not stopping when he began to feel drowsy was an intervening cause.

The trial court directed a verdict against the bus company and the driver, and the jury returned a verdict for $32,500. The bus company and driver appeal from the judgment entered upon the verdict. The plaintiff cross-appeals from the dismissal of the doctor and Group Health.

■ Since the trial court granted a motion for a directed verdict against the bus company and driver, and a motion for dismissal of the principal action and cross complaint against the doctor and Group Health, we must view the evidence most strongly against the moving parties. It is only when the court can say that there is no evidence at all to support the party opposing the motion that such a motion can be granted. *Miller v. Payless Drug Stores,* 61 Wn. (2d) 651, 379 P. (2d) 932 (1963).

The principal argument of the bus company and driver is that there is evidence from which the jury could conclude the doctor was the only negligent party, and that his negligence was the proximate cause of the accident. They argue that when the evidence is properly viewed, the bus driver is shown to be without fault.

█ A physician is responsible in damages when he fails to possess such skill and learning as is usually possessed by the average member of the profession in the locality where he practices, and to apply that learning with reasonable care. *Derr v. Bonney*, 38 Wn. (2d) 678, 231 P. (2d) 637, 54 A.L.R. (2d) 193 (1951).

In this case the trial court found that no standard of care as practiced in the local community was shown. The record, however, establishes the contrary. Doctor Robert Siverling stated:

"Q (by Mr. Hallin) And with respect to the prescribing this drug is there any particular comment made by you or would you say in your experience that it would be reasonable to make any comment to the patient in connection with prescribing the drug as to these various side effects and particularly as to the side effect of drowsiness? A Well, it would appear reasonable to ascertain or at least to inform a patient of side effects that may occur from any drug."

Doctors Smith, Van Arsdel, and Faghin all testified that a warning should be given when the drug is prescribed because of its potential known dangers. About 20 per cent of the people who take the drug experience unwanted side effects. The standard of care shown in the administration of the drug to a patient implicitly included the community in which Dr. Faghin engaged in the medical practice.

There is evidence in the record that the doctor failed to warn his patient, whom he knew to be a bus driver, of the dangerous side effects of drowsiness or lassitude that may be caused by the taking of this drug. This evidence was sufficient to submit the issue of the doctor's negligence to the jury.

█ It is contended that even if the doctor was negligent, his negligence was not a proximate cause of the accident by

reason of an intervening act of the bus driver; that the driver should not have continued driving the bus when he knew he was becoming drowsy. It is argued that this is negligence as a matter of law, and constitutes an intervening cause. We disagree. The negligence of the bus driver is a jury question, and should the jury find the bus driver to be negligent, the doctor would nevertheless be liable if the jury finds he failed to give warning of the side effects of the drug, since the harm resulting to the plaintiff was in the general field of danger, which should reasonably have been foreseen by the doctor when he administered the drug.

The applicable rule is stated in *Swanson v. Gilpin,* 25 Wn. (2d) 147, 169 P. (2d) 356 (1946), where we quoted from Restatement of the Law, Torts 1196-7, § 447:

" 'NEGLIGENCE OF INTERVENING ACTS. The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent con-- duct is a substantial factor in bringing about, if

" '(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
" '(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
" '(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.' "

We also quoted from 38 Am. Jur. 726, § 70, as follows:

" 'The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, and efficient intervening cause so that the negligence is not actionable, is subject to the qualification that if an intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of an injury, and he may be held liable, notwithstanding the intervening cause. The intervention of independent intervening causes will not break causal connection if the intervention of such forces was itself probable or foreseeable.' "

Also see 65 C.J.S., Negligence § 111(f); Prosser, Law of Torts (2d ed.) § 49.

█ The plaintiff, the doctor, and Group Health vigorously argue that this is the case of a "sleeping driver," and that this court should adopt a rule of strict liability when the driver of a common carrier falls asleep. They argue that the theories announced in *Theisen v. Milwaukee Auto. Mut. Ins. Co.,* 18 Wis. (2d) 91, 118 N. W. (2d) 140 (1962), should be adopted in Washington. However, the present case is not the case of a "sleeping driver," at least not as we must view the evidence and inferences therefrom. It is the case of a "drugged driver." A driver who becomes suddenly stricken by an unforeseen loss of consciousness, and is unable to control the vehicle, is not chargeable with negligence. Annot., 28 A.L.R. (2d) 35; 8 Am. Jur. (2d), Automobiles and Highway Traffic § 693. See *Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A.L.R. 460 (1922), and comments in *Nettleship v. Shipman,* 161 Wash. 292, 299, 296 Pac. 1056 (1931), in regard to *Dishman, supra.* We cannot say, as a matter of law, that the driver was negligent by falling asleep or fainting at the wheel, even in view of the premonitory symptoms he experienced. Our view is especially reinforced by reason of the testimony that the drug affected his judgment.

█ The plaintiff contends the bus driver is negligent as a matter of law because he violated RCW 46.56.010, which provides that ". . . It is unlawful for any person who is . . . under the influence of any . . . drug to a degree which renders him incapable of safely driving a vehicle to drive a vehicle upon the public highways. . . ." We do not think that one who innocently takes a pill, which is prescribed by a doctor, can be convicted of a crime under this statute and thus be negligent per se unless he has knowledge of the pill's harmful qualities. To hold otherwise would be to punish one who is not culpable.

We find the reasoning and the rule to be particularly well stated in the case of *State v. Brown,* 38 Kan. 390, 16 Pac. 259 (1888). There the defendant was charged with being drunk in a public place. The Kansas court held that the

crime was *malum in se,* and that if the drunkenness was produced by an innocent mistake of fact, the defendant would not be guilty. The court said:

". . . General terms inflicting punishment upon 'any person' who might do any particular act should be construed to mean only such persons as act voluntarily and intelligently in the performance of the interdicted act. We should not suppose, in the absence of specific words saying so, that the legislature intended to make accidents and mistakes crimes. Human actions can hardly be considered as culpable either in law or in morals, unless an intelligent consent of the mind goes with the actions; and to punish where there is no culpability would be the most reprehensible tyranny. The legislature usually in enacting criminal statutes, enacts them in general terms so as to make them by their terms include all persons; and yet it is always understood that some persons, as idiots, insane persons, young children, etc., are not to be considered as coming within the provisions of the statute. It is always understood that the courts will construe the statute in accordance with the general rules of statutory construction, and apply the act only to such persons as the legislature really intended to apply it; that is, to apply the act to such persons only as should intelligently and voluntarily commit the acts prohibited by the legislature. . . ."

15 Am. Jur., Criminal Law § 341, states the following:

"If intoxication is involuntary, as where it is caused by medical treatment, fraud, etc., it is a complete defense to a criminal charge based on an act done under its influence. The test of involuntary drunkenness is whether there was an absence of an exercise of independent judgment and volition on the part of the accused in taking the intoxicant. . . ."

In *People v. Koch,* 294 N.Y.S. 987, 250 App. Div. 623 (1937), the defendant inadvertently indulged in an overdose of a drug which had been prescribed for him by a physician. The court held that the defendant was not guilty of operating a motor vehicle while in an intoxicated condition since the statute contemplates only voluntary intoxication. Also see Perkins on Criminal Law at 781 (1957).

In the instant case the driver took the pill completely unaware that it would have any adverse effect upon him.

This involuntariness negatived the mens rea and established the driver's innocence. Viewing the evidence most favorably to the bus driver, we therefore hold that he is not guilty of negligence per se on the basis of RCW 46.56.010.

 The plaintiff contends that the bus company is strictly liable for injuries to passengers since it is a common carrier and is required by statute to carry insurance. RCW 46.72.040 through RCW 46.72.060. These statutes, however, are phrased in terms of financial responsibility for negligence, and they do not create liability without fault on the part of common carriers. It is the established law of this state that a common carrier is held to the highest degree of care for the safety of its passengers consistent with the practical operation of its business. This, however, falls short of making a common carrier an insurer of its passengers' safety. *Torrez v. Peck,* 57 Wn. (2d) 302, 356 P. (2d) 703 (1960); *Hedges v. Chicago, M., St. P. & P. R. Co.,* 61 Wn. (2d) 418, 379 P. (2d) 199 (1963).

 The plaintiff finally contends that the bus company has not overcome the presumption of negligence, and that it is responsible as a matter of law for the safety of its passengers, under the rules announced in *Hedges v. Chicago, M., St. P. & P. R. Co., supra.* We disagree. In that case we said:

"It is well settled that a common carrier of passengers owes the duty to exercise the highest degree of care consistent with the practical operation of its business; and where injury to a passenger occurs through some conveyance or apparatus of the carrier, *in the absence of other showing,* it must be assumed to have been due to negligence of its employees imputable to the employer. . . ." (Italics ours.)

Here we are presented with a situation where the common carrier has made a prima facie showing of an absence of negligence, and a question of fact has been presented for determination by the jury. Knowledge and conscious appreciation of the significance of facts constituting premonitory warning of sleep or incapacity to the driver is essential to sustain the bus driver's liability. The conclusion by the trial

court, as a matter of law, that the driver did have warning and conscious awareness cannot stand in the face of the driver's testimony that he did not, which is also buttressed by the medical testimony.

We are convinced from this record, however, that the plaintiff is entitled to judgment as a matter of law on the issue of liability against either the bus company and the driver, or Group Health and the doctor, or both, depending upon certain factual determinations by the jury which we hereinafter specify in our directions for remand.

The judgment of the trial court entered upon the jury verdict is reversed and remanded for a new trial on all issues subject to the following:

The jury should be directed that (a) in the event it finds no warning was given the bus driver as to the side effects of the drug, it shall bring in a verdict against Group Health and the doctor; (b) in the event the jury finds the bus driver failed to exercise the highest degree of care, even though he was given no warning as to the side effects of the drug, the jury shall also bring in a verdict against the bus company and the driver; and (c) in the event the jury finds that a warning of the side effects of the drug was given to the bus driver, then the verdict shall be against the bus company and the driver only.

We express no view as to any right which the bus company and the driver may have over against Group Health and the doctor for any portion of the judgment the bus company and the driver may have to pay in the event the jury finds all defendants liable under (a) and (b).

Costs will abide the final determination of the cause.

OTT, C. J., HILL, J., and EDGERTON, J. Pro Tem., concur.

HALE, J. (dissenting)—I dissent. When a bus driver goes to sleep at the wheel of his bus, either from fatigue or from the effects of a medicine or from a combination of both, he and his employers should be held liable to the passengers for all injuries proximately caused thereby.

Richard Wagner had driven this route for 19 years. Several days before the accident in visiting his physician, Dr.

Jack Faghin, for a routine annual medical check up, he mentioned a bothersome nasal condition. This did not appear to be disabling or a serious condition and when the doctor told Wagner that it could be readily taken care of, the doctor became either too busy or forgot to make out a prescription. On Friday next, though, January 26th, Wagner returned to Dr. Faghin's office and reminded him of it. The doctor was busy at the time but wrote out a prescription for pyribanzamine. The prescription, filled at the Group Health Cooperative Clinic Pharmacy, consisted of 25 pills, and the label read "Take 1 tablet 4 times daily before meals and bedtime."

Wagner had no conversations with and received no instructions or warning from Dr. Faghin or from the label concerning possible side effects of the pills. Saturday, January 27th, following his usual full night's sleep, he took the first pill at 5:30 a. m., had breakfast, and started out with his bus at 7 a. m.

Two or three miles before reaching the place of the accident, he noted that his eyes were getting heavy, and he felt sort of groggy and noticed that his lips and tongue were getting dry. He says that he ignored this drowsiness, or grogginess, because he had had a good night's sleep. Some 300 feet before the accident, Wagner made a proper turn at the corner. From that point on, he must have fallen sound asleep because he next recollects his eyes flying open when the bus jumped the curb at about 30 miles per hour and hit a pole. He says that in his mind he did not connect his drowsiness with the pill he had taken at 5:30 that morning.

That his sleep or drowsiness was a shallow one may be understood from the facts, because about one-half hour after the accident Wagner drove an automobile into Seattle with little difficulty, being quite wide awake throughout the drive.

I agree with the majority that whether the doctor was negligent in not warning his patient of the possible drowsiness from the medicine, considering even the casual and hurried manner in which the patient procured the pre-

scription, and whether such negligence, if any, was an efficient contributing cause, were questions of fact for the jury to resolve. I have little doubt though that the bus driver was negligent as a matter of law with no problem in that area to be submitted to the jury.

He was negligent as a matter of law because he went to sleep at the wheel, and because the statutes and ordinances of Seattle make it unlawful for one to drive a motor vehicle —much less a common carrier bus—while under the influence of *any* drug to a degree that renders him incapable of safe driving.

RCW 46.56.010 reads, in part:

"*It is unlawful for any person* who is an habitual user of or under the influence of any narcotic drug or *who is under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle to drive* a vehicle upon the public highways. The fact that any person charged with a violation of this section is or has been entitled to use such drug under the laws of this state shall not constitute a defense against any charge of violating this section." (Italics mine.)

The foregoing section makes it unlawful for any person who is under the influence of *any* drug to a degree rendering him incapable of safe driving to operate a vehicle on the public streets and highways. That the driver may have been entitled to use such drug is no defense to a charge brought under the section. Thus, obtaining the drug lawfully by purchase, prescription, or in the course of regular medical treatment, would seem to be no defense even to a criminal charge brought under RCW 46.56.010. How, then, could the right or entitlement to the drug be allowed in defense to a claim of civil negligence? Does not this statute place the whole burden on the driver? Is he not, under this act, charged with knowing the effects of drugs and medicines upon his faculties before he undertakes to drive a car?

One may have his eyes heavy lidded and feel drowsy without being an incompetent driver at the moment. These are premonitory warnings, and as long as they remain in the warning stages, no harm will likely result because

the individual may, by exercise of his will and other faculties, overcome them. But they are warnings of which he must, in my opinion, take heed. The driver assumes full responsibility for his ability to continue driving, not only because it is right that he have this responsibility but also because there is nowhere else to place it at the time the symptoms of drowsiness occur. Here the driver had premonitory symptoms of sleepiness several minutes before he went to sleep at the wheel of his bus.

The majority opinion overlooks the use of mild drugs by millions of people daily and of powerful drugs by others, many of which drugs produce symptoms of drowsiness or sleepiness in degrees varying from effects so slight as to be virtually unnoticeable to deep comatose states. Daily, for mild respiratory allergies, millions of people take antihistamines which they can purchase lawfully over the counter. Others in great numbers are taking tranquilizers, insulin, and other medicines, the use or denial of which may induce sleepiness, drowsiness or even coma. In my view, the statute puts the burden squarely upon the user. If he drives an automobile *after knowingly taking* the drug, mens rea is supplied. The scienter implied in the law, essential to a violation, is not that the state must prove knowledge that the drug will render one incapable of safe driving but imposes a far less heavy burden, *i.e.,* knowledge merely that one has taken the drug.

Of course, one is not culpable if the drug or medicine was given him without his knowledge; but Wagner requested and received the medicine, he knowingly administered it to himself, aware that it could have some effect upon his system. He cannot then be said to have innocently taken the pill when he knew that he took it.

Under the majority view, one could drive a motor vehicle in a state of gross intoxication and be held innocent under a defense that, while he knew alcohol to be intoxicating, he had no reason to believe that the amount consumed would produce intoxication in him. Yet the law is clear that the sole test is *intoxication* while driving; if that is established, the only defense would be lack of scienter that

the beverage consumed was alcoholic in content. Culpability commences with the knowing consumption of alcohol before or during driving. Where a drug detrimentally affects one's driving ability to a material degree, culpability begins then, I would say, with the knowing ingestion of the drug or medicine before or while driving.

But this is not exclusively the case of the drugged or medicated driver. It is also the case of the sleeping driver, because a driver may feel the ordinary symptoms of drowsiness or heavy liddedness that may be as readily induced from overeating, overconsumption of alcohol, listening to soporific music on the car radio, fatigue, lack of sleep— or from any number of causes affecting people in normal health. That any one of these causes may have intruded into or contributed to the bus driver's lapse is evidenced by his coming suddenly awake and his eyes flying open as the bus leaped the curb, and his ability to drive an automobile into Seattle less than one-half hour later.

Kaufman and Kantrowitz weigh all of these possibilities in their thesis that absolute liability be imposed on sleeping drivers. In their article, "The Case of the Sleeping Motorist," 25 N.Y.U. L. Rev. 362 (1950), they summarize as follows:

"The motorist should continue to be judged by the reasonable man test as to all of his acts in driving. He should not be liable unless he drives carelessly. But when he goes insane, faints or falls asleep while propelling his automobile along the highway, he ceases to be a driver. The risks of his ceasing to be a driver while his car goes rolling along should be borne by him and not by the hapless individual who gets hit. The driverless, but moving automobile is a mechanized wild beast. Responsibility for the harms caused by the involuntary abandonment of an automobile *ferae naturae* should be in the one from whose leash the beast has escaped.

"You must, at your peril, stay sane and conscious as you sit behind the wheel with the ignition on, the brakes off and your foot on the gas pedal."

In *Bernosky v. Greff*, 350 Pa. 59, 38 A. (2d) 35, the driver fell asleep while driving on a three-lane highway and lost control of his car. Leaving the highway, the vehicle struck

a telegraph pole 14 feet from the edge of the highway causing injuries to a passenger. The court, reversing a judgment for the defendant driver, said:

"Any individual who 'falls asleep' naturally, does so either willingly or through exhaustion. If he falls asleep willingly while driving an automobile he is, of course, negligent. If he drives an automobile while he is in such a state of exhaustion that he falls asleep though he does not will to do so, he is equally negligent, for he is chargeable with knowledge that an individual in a state of exhaustion is likely to fall asleep."

In *Pacific Employers Ins. Co. v. Morris,* 78 Ariz. 24, 275 P. (2d) 389, we see a good reason for the rule that falling asleep at the wheel of a moving vehicle is negligence per se. There evidence was submitted that the driver had died a second or so before his car swerved across the highway into the path of an oncoming truck. Allowing only sudden death as a defense, that court seems to adopt a rule of strict liability toward the sleeping driver when it says:

"We believe the question resolves itself into one of two alternatives, to wit, that Judge Baughn was either negligent or he was dead at the time the accident occurred. If he was dead at the time he could not be guilty of negligence . . ."

having earlier said:

" . . . Or if he went to sleep while driving and thus permitted the car to cross to the wrong side of the road he was guilty of negligence and in such event plaintiff [truck owner] should prevail."

Directly in point, *Theisen v. Milwaukee Auto. Mut. Ins. Co.,* 18 Wis. (2d) 91, 118 N. W. (2d) 140, expresses a modern and perhaps an inevitable point of view necessary to administering justice on the traffic-gorged streets and high-speed highways of today. In that case, the driver of the car, returning from a party at 3:00 a.m., went to sleep at the wheel of his car. It gradually edged off the road and hit a tree stump, killing the driver. In an action by one of the passengers, the Supreme Court of Wisconsin held it negligence per se to fall asleep while driving, saying:

"The trial court excluded an offer of proof made by the defendant which would have shown Shepherd was not a habitual user of alcoholic beverages and was physically exhausted from the loss of considerable sleep for some six weeks prior to the accident practicing for the play, getting to bed later than his normal bedtime, and continuing his usual farm chores. It was not error of the trial court to reject this evidence offered to prove a justification for going to sleep. On the contrary, such proof would have tended to show Shepherd should have known, as a reasonably prudent man, he was likely to have fallen asleep. Such offer of proof, of course, is immaterial under our holding that falling asleep while driving is negligence as a matter of law."

The court called for a rule of strict liability, saying:

"We must approach a sleeping-driver case on the premise the driver has the duty to stay awake while he drives and it is within his control either to stay awake, to cease driving, or not to drive at all when sleepy. . . .

" . . . Although it has been argued the liability of a sleeping driver should be absolute on the grounds of an extrahazardous activity, we do not base our decision on that ground but hold that falling asleep at the wheel is negligence as a matter of law because no facts can exist which will justify, excuse, or exculpate such negligence. . . ."

*Theisen v. Milwaukee Auto. Mut. Ins. Co., supra,* reaffirmed in *Voight v. Voight,* 22 Wis. (2d) 573, 126 N. W. (2d) 543.

We have now in the second half of this century reached a point in the control of traffic where rules having their roots in pastoral England—with coach, carriage and farm wagon moving deliberately along what would now be no more than a country lane—have little relevancy to the case of the sleeping or drugged driver. In those areas of a city or town where traffic perforce moves comparatively slowly —as in a business district—the hazards and consequences generated by the sleeping driver to pedestrian, passenger and nearby traffic alike are great indeed, yet the problems of proof may not be insoluble. But on the great freeways and expressways going through, around and connecting our large centers of population where automobiles roll along at

70 to 80 miles per hour, lane by lane, car after car, leaving and entering the freeway in endless streams, the consequences of the sleeping or drugged driver are frightful to contemplate, and they have little or no relevance whatever to concepts of negligence and burden of proof.

Every person operating a motor vehicle on the public streets, roads and highways stands charged with the knowledge that he will be moving his vehicle in areas where pedestrian and vehicular traffic may be heavy and where vehicles may move swiftly or on the major highways at great speeds. He stands charged with the knowledge that he will encounter these hazards and that a collision between automobiles traveling at high speeds may set off a reaction of successive collisions. He should also be deemed to know that the law will hold him accountable for falling asleep at the wheel of his car.

I would, therefore, impose upon the driver of a vehicle a rule of strict liability if he falls asleep while driving. I think that every person driving an automobile upon the public highways warrants to all other persons upon or near the highway that he will stay awake while at the wheel of his automobile. The law ought exact from every driver this minimum duty and entertain no defenses for its breach.

The rule of strict liability does not, in my opinion, deprive the driver and his company of their action over against the doctor and Group Health. It still remains a question of fact as to whether the physician, in the exercise of reasonable medical care, owed a duty in these circumstances to advise the patient that the medicine would induce a sleep or a coma, and whether the breach of such duty, if any, was an efficient contributing cause of the accident.

April 19, 1965. Petition for rehearing denied.