NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANTHONY and VICTORIA GARCIA,
a married couple; and ZIEARA RAMIREZ,
a single person, *Plaintiffs/Appellants*,

*v.*

ALFONSO SAAVEDRA; FOWLER ELEMENTARY
SCHOOL DISTRICT #45, a political subdivision of the
State of Arizona; and FIRST STUDENT, INC. a Delaware
corporation, *Defendants/Appellees*.

No. 1 CA-CV 14-0153
FILED 5-5-2015

Appeal from the Superior Court in Maricopa County
Nos.  CV2009-038093, CV2010-000544, CV2010-002547, CV2010-002550
CV2010-031675, CV2010-050096, CV2010-050741, CV2010-054390
CV2011-000071, CV2011-002491
(Consolidated)
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**

COUNSEL

O'Steen & Harrison, PLC, Phoenix
By Ward B. Rasmussen and Paul D. Friedman
*Counsel for Plaintiffs/Appellants*

Renaud Cook Drury Mesaros, PA, Phoenix
By William W. Drury, Jr., J. Scott Conlon, Kevin R. Myer
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.

---

**B R O W N**, Judge:

¶1          Anthony Garcia, Victoria Garcia, and Zieara Ramirez ("Plaintiffs") appeal the trial court's judgment entered on a defense verdict in favor of Alfonso Saavedra, Fowler Elementary School District #45, and First Student Inc. (collectively, "the District"). Plaintiffs argue the court erred by permitting the District to untimely assert the "affirmative defense" of sudden incapacity and by failing to accurately instruct the jury as to that defense. We conclude that (1) the court acted within its discretion in allowing the District to assert the sudden incapacity defense; and (2) even though the court's instruction to the jury was incomplete, the omission does not constitute reversible error. We therefore affirm.

### BACKGROUND

¶2          In 2009, Saavedra was employed as a school bus driver by First Student, Inc., a company that contracted with Fowler Elementary School District #45 to provide school bus transportation services for the District. On January 28, Saavedra was driving a school bus taking children from school to their homes when he rear-ended a vehicle that was slowing to stop for traffic, injuring Plaintiffs. Shortly before the collision with Plaintiffs, the school bus was traveling northbound on 67th Avenue at approximately forty miles per hour when the bus "sideswiped" a van and continued accelerating northbound. Four seconds after the initial impact with the van, the bus collided with the rear end of a Dodge pickup truck also traveling northbound on 67th Avenue. The bus rear-ended the truck two more times while accelerating northbound before colliding first with a Mitsubishi and then with Plaintiffs' vehicle as it slowed to stop for traffic. After colliding with Plaintiffs' vehicle, the bus traveled an additional 1900 feet, crossing into the southbound lanes and reentering the northbound lane before finally stopping.

2

¶3       After the incident, Saavedra told the investigating officer he had been driving northbound on 67th Avenue in the inside lane when a dark-colored car turning onto 67th Avenue from a trailer park got in his way and made contact with the front of the bus. He reported being awake during the accident but could not focus well after the initial collision and, at the time of the interview, was experiencing pain on the left side of his head where it hit the bus window. When recounting the incident at trial, Saavedra testified that the dark-colored car crossed in front of him from the universal turn lane while the bus was traveling at about forty to forty-five miles per hour. Saavedra stated that he tried to brake with the pedal while swerving left, and that as he reached for the hand brake, he felt a blow to the head that caused everything to go "black." He then explained that he heard multiple impacts as he regained his eyesight, but soon after he "lost it" and could not remember anything that happened until the bus came to a stop.

¶4       In January 2010, Plaintiffs sued the District, alleging Saavedra caused them serious bodily injuries by negligently operating the school bus at unsafe speeds and failing to yield to other vehicles. Plaintiffs also alleged the District was negligent per se for Saavedra's violation of Arizona Revised Statutes ("A.R.S.") section 28-701(A), which requires drivers to "control the speed of [their] vehicle[s] as necessary to avoid colliding with any object, person, vehicle, or other conveyance . . . in compliance with legal requirements and the duty of all persons to exercise reasonable care for the protection of others." In their answer to Plaintiffs' amended complaint, the District generally denied the allegations of the complaint and asserted comparative negligence, but did not reference sudden incapacity. The District subsequently filed notices of nonparty at fault, naming first the unidentified operator of the dark-colored vehicle described by Saavedra and later the driver of the van (a former co-defendant) as potential nonparties at fault.

¶5       Various pending lawsuits filed by other individuals who were injured in the incident were consolidated with the present case. Eventually each of the other claims were resolved and only Plaintiffs' claims were tried to a jury. The matter was originally set for trial in May, 2012, but was continued twice until June 2013, when the case proceeded to trial.

¶6       In May 2012, prompted by factual allegations included in the District's motion for partial summary judgment, Plaintiffs moved to strike the District's sudden incapacity defense, arguing the District had failed to plead the affirmative defense as required by Arizona Rule of Civil

Procedure ("Rule") 8(c). Plaintiffs asserted that because the District did not disclose its intent to argue the affirmative defense until 60 days before the original trial date and after discovery had closed, they were unable to conduct discovery on the issues and were unfairly prejudiced.

¶7 The District countered that sudden incapacity is not an affirmative defense to which Rule 8(c) applies and, even if it is, Plaintiffs had acknowledged Saavedra's potential incapacity was at issue in their July 22, 2010 initial disclosure statement and thus were not prejudiced by any late disclosure. In their reply, Plaintiffs asserted that the District's sudden incapacity theory rested on testimony from a medical expert, Dr. Charles Bain, that Saavedra may have suffered a "vasovagal episode" while driving.[1] While Saavedra had previously claimed that his incapacity was the result of striking his head on the bus window during the sideswipe incident, Plaintiffs argued that the newly-asserted theory that Saavedra experienced a vasovagal episode may have been the product of a preexisting condition and that they were prejudiced by their inability to conduct discovery into his medical history. In July 2012, the trial court denied Plaintiffs' motion. At that time, trial was scheduled for January 2013.

¶8 At various times, the parties submitted proposed jury instructions. In May 2012, when trial was originally scheduled to begin later that month, the parties jointly submitted proposed jury instructions but did not include any instruction addressing the sudden incapacity defense. In January 2013, prior to the second trial setting, Plaintiffs filed a request for non-RAJI jury instructions and presented a two-part instruction for sudden incapacity, which provided as follows:

> [#1] A sudden loss of consciousness or physical capacity experienced while driving which is not reasonably foreseeable is a defense to a negligence action.
>
> Loss of consciousness means a state of impaired consciousness in which one shows no responsiveness to environmental stimuli.

---

[1] At trial, Dr. Bain explained that a vasovagal episode, or "neurocardiogenic syncope," occurs when a person suffers decreased blood flow to the brain. Symptoms of a vasovagal event include, dizziness, blurred vision, fatigue, and possible fainting.

Loss of physical capacity means the quality or state of being incapable, the lack of physical or intellectual power.

If one's own negligence is a cause of the sudden loss of consciousness or physical incapacity, the sudden incapacity defense does not apply.

[#2] For the sudden incapacity defense to apply, you must find from the evidence that:

1. Alfonso Saavedra lost control of the school bus because of some physical incapacity; and,

2. The physical incapacity, which caused Alfonso Saavedra to lose control of the school bus, was one that came upon him suddenly and was of a kind that he should not reasonably foresee would occur at that time.[2]

---

[2]    At the same time, the District submitted its own proposed instruction in support of the sudden incapacity defense:

A driver who is suddenly stricken by an unforeseen physically incapacitating event is not negligent if the event was not reasonably foreseeable. You must consider this in determining whether the driver acted with reasonable care under the circumstances.

[The District is] not negligent if Mr. Saavedra, while driving the school bus, was suddenly stricken by a physical event which he could not reasonably foresee, which rendered him unable to control the school bus.

To determine if Mr. Saavedra could reasonably foresee the possibility of sudden incapacity, you may consider whether or not the evidence shows that Mr. Saavedra knew or should have known his health was such that a reasonably prudent person would not risk driving at the time he got behind the wheel to drive the bus.

If you determine that Mr. Saavedra became suddenly incapacitated, and that the incapacity was not reasonably foreseeable to him, [the District is] not negligent, even if you

3. The physical incapacity, which caused Alfonso Saavedra to lose control of the school bus, was not caused by Alfonso Saavedra's own negligence.

¶9          The trial court declined to use either parties' proposed instructions, opting instead to use the following as part of its preliminary and final instructions to the jury:

A driver who is suddenly stricken by an unforeseen physically incapacitating event is not at fault for any negligence if the physically incapacitating event was not reasonably foreseeable and the driver's own negligence was not a cause of the physically incapacitating event.

To determine if Mr. Saavedra could reasonably foresee the possibility of sudden incapacity, you should consider whether or not the evidence shows that Mr. Saavedra knew or should have known his health was such that a reasonably prudent person would not risk driving at the time the person first began to drive the bus.

The court also included an instruction that the District had the burden of establishing the sudden incapacity defense.

¶10          After the jury returned its verdict in favor of the District, Plaintiffs moved for a new trial arguing, among other things, (1) they were deprived of a fair trial due to the "surprise" defense of sudden incapacity; and (2) the court failed to properly instruct the jury regarding sudden incapacity because the instruction given did not adequately define "loss of consciousness" or "loss of physical capacity." After oral argument, the court denied Plaintiffs' motion for new trial and this timely appeal followed.

## DISCUSSION

### A.    Assertion of Sudden Incapacity Defense

¶11          Plaintiffs argue the trial court erred in allowing the District to present the "affirmative defense" of sudden incapacity at trial because the District failed to plead the defense in its answer. The District counters that

find that Mr. Saavedra drove improperly or violated traffic laws after he became incapacitated.

the court had the discretion to impliedly amend the pleadings to include the defense, and Plaintiffs were neither surprised nor prejudiced.

¶12            As a general rule, a person operating a vehicle has a duty to exercise reasonable care for the protection of others, and a person who drives in an unreasonable manner may be liable for any damages caused by his or her negligence. *See* Restatement (Second) of Torts § 282 (1965); A.R.S. § 28-701(A).  The plaintiff has the burden of proving duty, breach of that duty, proximate cause, and damages. *Smith v. Johnson*, 183 Ariz. 38, 41 (App. 1995).  However, a driver who suffers a sudden medical emergency resulting in the driver's incapacity is not liable for negligence when the driver loses control of his vehicle and drives it in a manner that would otherwise be unreasonable if the medical emergency was unforeseeable at the time the person began driving.  Restatement (Second) of Torts § 283C (1965); 1 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 129 at 406 (2d ed. 2011).  Although the plaintiff has the burden of proving that the defendant was negligent, the defendant has the burden of proving that his or her sudden and unforeseeable medical incapacity led to a loss of control that caused the accident.  *See Goodrich v. Blair*, 132 Ariz. 459, 461 (1982).

¶13            Here, we assume without deciding that a defendant's assertion of sudden incapacitation is an affirmative defense to a complaint. *See* Ariz. R. Civ. P. 8(c) (stating that an answer to a complaint must set forth "any . . . matter constituting an avoidance or affirmative defense."); *see also* Dobbs, *The Law of Torts* § 129 (Sudden incapacity "has sometimes been referred to as an affirmative defense, but it actually rests on the proposition that the defendant is judged by his own physical capacity and is simply not negligent unless he knows or should know that he may become incapacitated*")*; Timothy E. Travers, Annotation, *Liability for Automobile Accident Allegedly Caused by Driver's Blackout, Sudden Unconsciousness, or the Like*, 93 A.L.R. 3d 326  (1979) ("[C]ourts in a number of cases have held that such a defense is an affirmative defense which usually must be specially pleaded, and is not raised by a general denial.").  Affirmative defenses omitted from an answer or Rule 12 motions are generally waived. *See* Ariz. R. Civ. P. 12(h); *City of Phoenix v. Fields*, 219 Ariz. 568, 574, ¶ 27 (2009).

¶14            Aside from the four specific defenses enumerated in Rule 12(h)(1) (lack of jurisdiction, improper venue, insufficiency of process or insufficiency of service of process), a trial court retains discretion to allow amendment of the pleadings at any time.  *Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 185-86 (App. 1990) (citing *Baxter v. Harrison*, 83 Ariz. 354 (1958)).  The purpose of the Rule 8(c) pleading requirement is to provide

notice of a defendant's assertion of an affirmative defense and to prevent unfair surprise to the plaintiff. *City of Phoenix v. Linsenmeyer*, 86 Ariz. 328, 333 (1959); *Gerow v. Covill*, 192 Ariz. 9, 18, ¶ 42 (App. 1998) (explaining the purpose of requiring disclosure is to provide "the parties 'a reasonable opportunity to prepare for trial or settlement—nothing more, nothing less' and to 'maximize the likelihood of a decision on the merits'") (citations omitted). Thus, "a court may properly allow a defendant to amend an answer to include an omitted defense as long as the plaintiff is not surprised or prejudiced thereby." *Sirek*, 166 Ariz. at 186. A plaintiff is not surprised or prejudiced by a late pretrial disclosure as long as the plaintiff is given "adequate notice and time to prepare." *Gerow*, 192 Ariz. at 18, ¶ 43.

**¶15** Because a trial court has discretion to allow parties to amend the pleadings, "failure to formally amend the pleadings will not affect a judgment based upon competent evidence[,]" and if "an amendment to conform the pleadings to the proof should have been made, an appellate court will presume that it was so made to support the judgment." *Elec. Adver., Inc. v. Sakato*, 94 Ariz. 68, 71 (1963). Furthermore, in the exercise of its discretion, a trial court may treat as an amendment subsequent filings that include defenses or allegations not made in the defendant's answer in lieu of actual amendment of the pleadings. *Baxter*, 83 Ariz. at 356 (holding "it was proper for the court to treat the allegations in the affidavit in support of the motion for summary judgment as amending the answer" when defendant failed to raise plaintiffs' lack of capacity to sue in initial Rule 12 response).

**¶16** According to Plaintiffs, the District first disclosed the sudden incapacity defense in March 15, 2012, when it filed its motion for partial summary judgment, alleging that Saavedra became physically incapacitated and "remained in this physical state during collisions with other vehicles." Plaintiffs fail to acknowledge, however, that Saavedra's capacity to control the bus was at issue as early as July 22, 2010, when Plaintiffs submitted their initial disclosure statement. But even assuming the District disclosed the sudden incapacity defense for the first time in their motion for partial summary judgment, we conclude the trial court acted within its discretion in finding Plaintiffs had suffered "no unfair prejudice" at the time it denied their motion to strike the affirmative defense.

**¶17** Although the trial was originally set for May, 2012, the trial court vacated that trial setting on its own motion and twice the trial was reset. Once the case proceeded to trial in June 2013, more than a year had passed in which Plaintiffs had the opportunity to request additional

discovery as to Saavedra's physical state before, during, and after the incident, and to prepare to contest the District's affirmative defense at trial.[3] Thus, we find no abuse of discretion with the trial court's decision to allow the District to present the sudden incapacity defense to the jury.

### B.    Sudden Incapacity Jury Instruction

**¶18**        Plaintiffs argue the sudden incapacitation instruction given was "legally deficient" because it did not instruct the jury it would be required to find that Saavedra was incapable of controlling the bus as a result of his incapacitation if the jury were to accept the sudden incapacity defense.  Plaintiffs therefore assert that the court's failure to specifically instruct the jury on inability to control the bus constitutes an erroneous statement of law that caused them prejudice.

**¶19**        We review de novo whether jury instructions properly set forth the law, *State v. Orendain*, 188 Ariz. 54, 56 (1997), but review the trial court's denial of requested jury instructions for abuse of discretion, *Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 198, ¶ 24 (App. 2009).  When a party challenges a jury instruction on appeal, reversal is only justified if the instruction is erroneous and prejudices the substantial rights of the appealing party.  *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 504, (1996). Prejudice "must affirmatively appear from the record" and will not be presumed.  *Id.*

**¶20**        "Jury instructions are viewed as a whole, with an eye toward determining whether the jury has been given the proper rules to apply in arriving at its decision." *Catchings v. City of Glendale*, 154 Ariz. 420, 424 (App. 1987). A party "is not entitled to the use of any specific words, but merely to have the jury fairly and adequately apprised of the applicable law." *Petefish By and Through Clancy v. Dawe*, 137 Ariz. 570, 576 (1983) (internal quotations omitted).  The lack of a particular instruction is not fatal when the instructions, read as a whole and in light of the evidence presented at

---

[3]        Plaintiffs argue they were unfairly prejudiced because no discovery was undertaken regarding Saavedra's medical condition nor did Plaintiffs have experts to challenge the medical opinions of Dr. Bain because the discovery deadline had already expired when it became apparent that the District would be asserting the sudden incapacity defense.  However, consistent with the trial court's observation at oral argument on the motion for new trial, Plaintiffs did not ask for reopening of the discovery period or otherwise seek to obtain additional discovery relating to Saavedra's medical history or to retain a medical expert.

trial, adequately set forth the law. *Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 187 Ariz. 121, 127 (App. 1996); *see also State v. Poland*, 144 Ariz. 388, 403 (1985). Additionally, arguments of counsel may be considered in assessing the adequacy of a particular instruction. *See State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989). A jury verdict will not be overturned based on an allegedly improper jury instruction unless there is substantial doubt as to whether the jury was properly guided in its deliberations. *Petefish*, 137 Ariz. at 576.

**¶21** Citing *Pacific Employers Ins. Co. v. Morris*, 78 Ariz. 24 (1954), and *Goodrich v. Blair*, 132 Ariz. 459 (App. 1982), Plaintiffs argue that the sudden incapacity defense requires a defendant to prove the following: (1) the driver must be stricken with a sudden incapacitation; (2) the incapacitation was unforeseeable to the driver; (3) the driver was not capable of independent action or any action in controlling the vehicle as a result of the incapacitation; and (4) the incapacitation caused the accident and injured the plaintiff. Without the third element (inability to control the vehicle), Plaintiffs contend the court's instruction inaccurately stated the elements of the sudden incapacitation defense under Arizona law. We express no opinion as to the precise elements of the sudden incapacitation defense because the parties, each of whom included a reference to loss of control in their proposed instructions, do not dispute that a complete sudden incapacitation jury instruction should require proof that the defendant driver lost control of the vehicle. The trial court's decision to omit the phrase "incapable of control" from the final jury instruction in this case, however, does not necessarily mean the court committed reversible error.

**¶22** In *Pacific Employers*, an individual suffered a heart attack and died while driving, which caused his vehicle to travel into oncoming traffic and collide with a truck. 78 Ariz. at 28. Regarding the driver's negligence, the trial court instructed:

> The standard required is that of a reasonably prudent person under all the circumstances. If some unforeseen emergency or act of God occurs which overpowers the judgment of the ordinary careful driver, *or* renders him incapable of control of a motor vehicle, so that for a time he is not capable of independent action or any action in controlling a motor vehicle, and as a result injuries are inflicted upon another or his property, then such driver is not negligent[.]

*Id.* at 29-30 (emphasis added). After discussing the instruction, the supreme court determined that nothing therein "could be considered as reversible error." *Id.* at 30.

¶23 In *Goodrich*, another case in which an individual suffered a fatal heart attack while driving, this court clarified that the defense of sudden incapacity "shifts the point of inquiry away from the moment of negligent driving, and causes the jury to consider the defendant's decision to drive at all." 132 Ariz. at 461. In doing so, we specifically declined to determine the adequacy of the jury instructions given in *Goodrich*, which provided, in part:

> For this defense to apply, you must find from the evidence that:
>
> 1. [Defendant] lost control of his automobile because of some physical incapacity; and,
>
> 2. The physical incapacity, which caused [Defendant] to lose control of his automobile, was one that came upon him suddenly and was of a kind that he should not reasonably foresee would occur at that time.

*Id*. *Pacific Employers* and *Goodrich* are the only two Arizona reported decisions directly addressing the sudden incapacity defense. Neither case, however, holds that a particular instruction for the defense is required nor does either case specify the precise elements. And, because both cases involved situations where the drivers had clearly lost control of the vehicles they were driving, neither case is helpful here in determining whether the trial court's instruction in this case misled the jury such that a new trial is required. Instead, we look to the evidence presented at trial, the statements and arguments from counsel, and the instructions as a whole to determine whether the jury properly understood its role in evaluating the sudden incapacity defense.

¶24 Throughout trial, Plaintiffs and the District focused on whether Saavedra was incapacitated and thereby lost control over the school bus when striking the numerous vehicles, and in particular, Plaintiffs' car. During opening statements, Plaintiffs' counsel introduced the sudden incapacity defense to the jury and asserted that Saavedra did not lose control over the bus because he kept driving it straight and eventually came to a "controlled stop." Counsel for the District repeated the court's sudden incapacity instruction to the jury and stated that "Mr.

Saavedra became mentally impaired and lost control of his vehicle before any vehicle impact or bus swerving occurred."

¶25 In summarizing the elements of the sudden incapacity defense during closing arguments, Plaintiffs' counsel explained to the jury the District has to "prove that the physically incapacitating event was not reasonably foreseeable" and that Saavedra's "own negligence was not a cause of the physically incapacitating event." Plaintiffs' counsel quoted from an expert biomechanist's trial testimony, stating that "Mr. Saavedra became mentally impaired and lost control of his vehicle before any vehicle impact or bus swerve occurred." Counsel also quoted from two dictionaries, defining "incapacity" as "[t]he want of capacity" and "[t]he quality or state of being incapable," and based on these definitions, argued to the jury that physical incapacity means a complete lack of capability, not "partial incapacity" or "altered consciousness." These statements from counsel were consistent with the definition of "physical incapacity" that Plaintiffs sought in their first alternative instruction. Additionally, the District's counsel explained in closing argument that incapacitated means Saavedra "wasn't able to control his vehicle." Given these explanations, we cannot say there is a substantial doubt the jury was properly guided in its deliberations. *See Petefish*, 137 Ariz. at 576.[4]

¶26 Moreover, Plaintiffs have failed to establish prejudice. They merely assert that the trial court's failure to instruct on loss of control "makes the Jury instruction erroneous and prejudiced the Plaintiffs." The jury entered a general verdict in favor of the District. Absent a special verdict articulating the jury's findings as to each claim and defense, the jury may have found that Plaintiffs failed to prove each element of their negligence claim against the District, or, the jury may have decided that the District adequately proved its sudden incapacity defense. With only a general verdict, the jury was not obligated to indicate its finding. As such, Plaintiffs have not met their burden of establishing prejudice. *See Walters v. First Fed. Sav. and Loan Ass'n of Phoenix*, 131 Ariz. 321, 326 (1982) ("The

---

[4] Evidence presented at trial, particularly the testimony of Dr. Bain, also supports our conclusion that the jury was informed that Saavedra's alleged incapacity had to be tied to losing his ability to control the bus. Plaintiffs argue that Saavedra experienced only "diminished capacity," which does not equate to "incapacity." But the jury, as the trier of fact, was responsible for resolving factual disputes, including the degree to which Saavedra became incapacitated while driving and whether that incapacity caused him to lose control of his ability to drive in a non-negligent manner.

prejudicial nature of the [trial] error will not be presumed but must affirmatively appear from the record.").  Accordingly, we conclude that no reversible error occurred regarding the court's jury instruction.

## CONCLUSION

¶27     For the foregoing reasons, we affirm the trial court's judgment and grant the District's request for taxable costs on appeal contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama